(No. 6597.   February 3, 1939.)

FIRST TRUST & SAVINGS BANK, a Corporation, Respondent, v. A. E. RANDALL and ESTELLA W. RANDALL, Appellants.

[89 Pac. (2d) 741.]

J. H. Felton, for Appellants.

A. L. Morgan, for Respondent.

BUDGE, J.—Respondent, First Trust & Savings Bank, instituted action against A. E. Randall, June 29, 1935, upon two promissory notes, both dated March 19, 1921, payable June 1, 1921, and October 1, 1921, respectively, said notes having been executed by the Montana Emporium Company, by Randall as manager, and bearing the personal indorsement and guarantee of appellant A. E. Randall.

Certain property was attached and appellant Estella W. Randall intervened in the action claiming title to the attached property.

A. E. Randall and the intervenor, Estella W. Randall, appeal from the judgment rendered by the court in favor of respondent and against both appellants.

It appears that suit was not instituted upon the notes until after the lapse of approximately fourteen years from the date the notes became due and payable, the complaint alleging, however, that since March 19, 1921, A. E. Randall had been absent from and a nonresident of the state, save on a few scattered occasions, which did not aggregate a total duration of more than 90 days. The answer of A. E. Randall denied the foregoing allegations and as separate defenses alleged that the causes of action were barred by the provisions of sections 5–216 and 5–239, I. C. A.; that no delivery was ever made of the notes to respondent by either the Montana Emporium Company or A. E. Randall,—the facts being specifically set forth; that no consideration was received for the notes; and that the notes were paid by the Montana Emporium Company.

At the close of respondent's case appellant A. E. Randall moved the court for a judgment of nonsuit, which was granted March 20, 1936. On April 17, 1936, respondent moved to reopen the case for the purpose of introducing additional testimony, basing such motion upon the affidavit of A. L. Morgan, to the effect that contrary to the expectation of counsel for respondent appellant A. E. Randall, when called for cross-examination under the statute, testified to various and sundry visits and stays in the state of Idaho totaling approximately 70 months, and that affiant is informed and believes that such testimony was wilfully and deliberately false,

and that respondent would be able to produce abundant, convincing and satisfactory proof that A. E. Randall was not in Idaho for a greater combined period than two months. The court ordered the cause reopened and thereafter additional evidence was introduced by respondent and appellants, at the close of which, findings of fact, conclusions of law and judgment were made and entered in favor of respondent.

Among other matters appellants assign as error those findings of fact, conclusions of law and the judgment based thereon, to the effect that the promissory notes were delivered to respondent, and in making finding number X, reciting:

"That said instruments were not placed by the defendant in his personal safety deposit box in the First National Bank of Galata, Montana, and were not by some person or persons unknown to defendant stolen and removed from said safety deposit box, and that the defendant, A. E. Randall's testimony with reference thereto is false. That the said A. E. Randall executed and guaranteed the notes as above set out and delivered the same to the First Trust & Savings Bank of Moscow, Idaho, in due course of business."

Appellant A. E. Randall as a second separate defense alleged as follows:

"That on the 19th day of March, 1921, the Montana Emporium Company was a cooperative association duly organized and existing under and by virtue of the laws of the State of Montana.

"II.

"That although the defendant signed the two instruments in writing set forth in the plaintiff's complaint, the first as an officer of the Montana Emporium Company, and the second personally, that they were both signed at the same time, that no delivery was ever made of said instruments or either of them to the plaintiff either by the Montana Emporium Company or by the defendant.

"III.

"That said instruments were placed by the defendant in his personal safety deposit box in the First National Bank of Galata, Montana, and were by some person or persons unknown to defendant stolen and removed from said safety deposit box, without the knowledge or consent of the defend-

ant, and in some manner unknown to defendant, the plaintiff obtained possession thereof.''

Although advised in considerable detail of that which appellant intended to prove with respect to the nondelivery of the notes, no effort to disprove such allegations, or to impeach or discredit testimony adduced for such purpose, was made by respondent, but it stood solely upon the presumption that there had been a delivery of the notes. The original answer was filed October 28, 1935, the amended answer March 20, 1936, the case was ordered reopened on April 20, 1936, and on December 15, 1937, more than two years after the answer had been filed, evidence was permitted to be introduced in the case.

Section 26–116, I. C. A., provides:

*"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditioned or for a special purpose only, and not for the purpose of transferring the property in the instrument.*

''But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. *And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved.''* (Emphasis inserted.)

The evidence adduced discloses a situation with rather unusual angles. Plaintiff's Exhibits A and B, the notes sued upon, in the amounts of $5,000 and $1168.60, respectively, were offered in evidence by respondent and admitted, it appearing that respondent had possession of such instruments. W. E. Cahill, cashier of respondent, testified that the notes were renewals of a former note of the Montana Emporium Company, Exhibit A, the $5,000 note representing the original indebtedness, and Exhibit B, the $1168.60 note, represent-

ing the interest. It also appears that the obligation evidenced by the former note was secured by a chattel mortgage upon certain grain elevators, additions, machinery, etc., in Montana. Hawkin Melgard, president of respondent bank, testified that he filled out the notes, Exhibits A and B, and sent them to Galata, Montana:

"The COURT: The question asked you was whether or not these notes were signed down here in your place of business in Moscow, Idaho.

"A. They were not. They must have been signed in Galata, because they were mailed to Galata for his execution."

"Q. Now, do you know that he sent this note back to you; these two notes back to you?

"A. I can't swear that he or somebody else sent them, no; but I can swear that the renewals were mailed to him.

"Q. . . . . Then, Mr. Melgard, have you got the letter that he mailed these notes back to you with?

"A. I have not.

"Q. *Then you have no way of knowing who mailed these notes to you?*

"A. Not positively." (Emphasis inserted.)

The testimony of the cashier, Cahill, is likewise to the effect that the bank had no letter which had accompanied the return of the notes and no envelope in which they had been returned, and that he did not know in what manner, by what method, nor by whom, the notes had been returned to the bank. Certain documentary evidence was introduced by respondent pertaining to the obligation. Three letters, Respondent's Exhibits G, H, and I, were admitted in evidence, the letters being dated February 14, January 3, and March 21, 1921, from appellant Randall to respondent, all dated prior to the date of Exhibits A and B, and all relating to the inability to pay the obligation then existing and which Exhibits A and B allegedly renew. There were also admitted in evidence Respondent's Exhibits C, D, and E, carbon copies of letters from respondent to Randall, dated February 7, February 19, and March 19, 1921, all prior to the dates of the notes, Exhibits A and B. Exhibit C, was a letter insisting that Randall give the matter of the obligation immediate attention. Exhibit D, recited in part as follows:

"However, if you will promptly arrange to take care of all back interest on the original loan, which to date amounts to $1131.20, we shall renew the remaining $5,000.00 until October 1st. This is absolutely the best proposition that we feel we can offer you and if you do not avail yourself of it there is only one recourse open to us, and that is *to start foreclosure of our lien.*" (Emphasis inserted.)

Exhibit E recites as follows:

"March 19, 1921

"Mr. A. E. Randall,

"Galata, Mont.

"Dear Sir:

"Disliking very much to cause you any needless expense or trouble and with faith in the promises put forth in your letter of the 8th, we are handing you herewith for execution and return, two renewal notes covering your indebtedness to this Bank.

"Please be sure to endorse both of them individually on the back in the space provided for that purpose and also attach the necessary revenue stamps which for the larger note is $1.00 and the other twenty-four cents.

"While there is no trouble to loan our money locally now at ten percent, we have made these renewals read but eight percent as before in order to be as easy with you as possible.

"In consideration of this treatment we expect you to use every means at your disposal to liquidate this indebtedness as fast as possible and *in no event later than the maturity date of each note.*"

The documentary evidence discloses that at this point, March 19, 1921, correspondence between respondent and appellant A. E. Randall ceased, the cashier testifying that nothing more appeared thereafter. In substantiation of that which appellant Randall had given notice by his pleadings long before would be his proof upon the question of nondelivery, Randall testified that Mr. Erwin a director of the Montana Emporium Company asked him to endorse the notes, Exhibits A and B, and that he did so at Galata, Montana, endorsing them with the understanding he was to have security, and after endorsing them placed them in his personal safety deposit box in the First National Bank of Galata and did not

see them again until the time of the trial of the instant action. Randall likewise testified that the notes, Exhibits A and B, were renewals of another note or notes, secured by a chattel mortgage in Montana. A portion of Mr. Randall's testimony recites:

"Q. Now Mr. Randall, when did you receive the notes, Plaintiff's Exhibits A and B, from the First Trust and Savings Bank?

"A. Received them by mail.

"Q. And then you took them to a meeting of the Company, or what?

"A. Well, I talked to some of the directors to have a special meeting.

"Q. And did they have a special meeting?

"A. Yes, they had a special meeting.

"Q. And did you ever turn them out of your possession?

"A. No, I never did. . . . . I signed them and I put them in my pocket and the next day I put them in my safety deposit box.

"Q. Who had the keys to that?

"A. I did.

"Q. Was that your own safety deposit box?

"A. Yes, it was.

"Q. How was the safety deposit box finally opened, if you know?

"A. The bank had fell in the hands of—went broke, and they opened it and took the stuff out, and sold the lockers.

"Q. And when was it that you got possession of the materials that you had in your box?

"A. I didn't get possession of it until '24. I think it was late in '24.

"Q. And was it then in the box or what was it in?

"A. No they handed it to me in a coin sack, the same I had over here in Mr. Goff's office.

"Q. Now, did any other person of the Emporium Company to your knowledge, deliver these notes to the First Trust & Savings Bank?

"A. No.

"Q. Did you ever deliver them to the Emporium Company?

"A. No, I never did."

No attempt was made by respondent to impeach appellant A. E. Randall, nor to discredit his positive testimony referred to, and no attempt was made, although some two years opportunity was given, to produce testimony to the effect that the situation with reference to the closing of the bank, the safety deposit box, and the return of its contents was other than that actually testified to by appellant A. E. Randall, nor to show that it was impossible to produce such testimony.

It appears from the record that there was not only the positive, uncontradicted, unimpeached and undiscredited testimony of appellant upon the question of nondelivery, but certain uncontradicted facts and circumstances strongly tend to corroborate such testimony. While respondent, by its letters, Exhibits D and E, had indicated that no delay in payment beyond the due dates of the renewal notes would be tolerated, suit was not instituted until some fourteen years thereafter. Respondent's own record or evidence discloses that all communication with reference to the notes, Exhibits A and B, occurred prior to the date thereof, and that at no time after the date of the notes, Exhibits A and B, was any demand ever made upon appellant A. E. Randall, or anyone, for payment, renewal, or otherwise. Although a *subpoena duces tecum* was served upon the cashier of respondent, asking him to bring into court all records and files, including letters, in reference to these notes, Exhibits A and B, covering all times between the date of the notes and the time suit was instituted, the only record which was produced, and which the cashier Cahill testified was the only entry in the books of the bank, was a record showing that items in the amount of $1168.60 and $5,000, of the Montana Emporium Company were "Charged to Undivided Profits." While respondent conceded that Exhibits A and B were renewals of a previous obligation, evidenced by a note, secured by chattel mortgage on certain elevators in Montana, the record discloses that the chattel mortgage securing such previous obligation had not been released and that a note of the Emporium Company in the amount of $5,303.60, concededly pertaining to the same obligation had not been returned to either appellant A. E. Randall or the Montana Emporium Company but was still in the possession of respondent at the trial and was produced, the record reciting:

(Cross-examination of Mr. Cahill, cashier of respondent):

"Q. You have in your possession a note dated December 14, 1918, do you not. From these same parties? . . . .

"A. Yes.

"Q. May I see it? (Paper handed to Mr. Felton.)

(Note marked Defendant's Exhibit 3 for Identification.)

"Q. Handing you Defendant's Exhibit 3 for identification, is that the note that I just asked you about . . . . .

"A. Yes."

(Direct examination of A. E. Randall):

"Handing you Defendant's Exhibit 3 for identification, is that the other note of which these (A and B) were renewals?

"A. Yes, it is.

"Q. And was that note secured by a mortgage? . . . .

"A. Yes, it was. . . . .

(Defendant's Exhibit 3 admitted.) . . . .

"Handing you Defendant's Exhibit 8 for identification, that is a certified copy of the mortgage recorded in Toole County, Montana, is it not?

"A. Yes. . . . .

"Q. Is that a copy of the mortgage securing Defendant's Exhibit 3, which I just handed you?

"A. Yes it is." (Exhibit 8 admitted in evidence.)

In the face of such positive evidence of nondelivery, with considerable testimony of facts and circumstances in corroboration thereof, and with nothing more than a presumption of delivery arising from the fact of possession by respondent of the executed notes, a possession accompanied by evidence of almost incredible actions by respondent, the trial court found that the testimony of A. E. Randall with reference to placing the notes in the safety deposit box and not delivering them to respondent is false, and entered judgment for respondent.

The rule was recently announced by this court that the court must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or the trial and that the trial court may not arbitrarily or capriciously disregard the testimony of a witness unimpeached by any of the modes known

to the law, if such testimony does not exceed probability. (*Pierstorff v. Gray's Auto Shop*, 58 Ida. 438, 74 Pac. (2d) 171.) In addition to cases cited in *Pierstorff v. Gray's Auto Shop, supra*, see *Michaels v. Pacific Soft Water Laundry*, 104 Cal. App. 349, 286 Pac. 172, rehearing denied 286 Pac. 1071; *Hynes v. White*, 47 Cal. App. 549, 190 Pac. 836; *Hubbard Banking Co. v. Koetsch*, 105 Okl. 227, 231 Pac. 207; *Utah Commercial & Sav. Bk. v. Fox*, 44 Utah, 323, 140 Pac. 660; *Karren v. Blair*, 63 Utah, 344, 255 Pac. 1094; *Leavitt v. Thurston*, 38 Utah, 351, 113 Pac. 77; *Sundgren v. Stevens*, 86 Kan. 154, 119 Pac. 322, 39 L. R. A. (N. S.) 487; *Bates v. Chicago etc. Ry. Co.*, 140 Wis. 235, 122 N. W. 745, 133 Am. St. 1069.

▆ Appellant A. E. Randall's testimony as to nondelivery of the notes was positive, unimpeached and uncontradicted and it did not exceed probability in any phase. On the other hand the explanation by Randall was credible and entirely probable and its context fully announced long prior to trial, and from all that appears it was not impossible to disprove, if actually untrue. The facts and circumstances made to appear by the record, and which the court did not find to be false, fully corroborate appellant's explanation and are wholly inconsistent in many instances with the presumption relied upon by respondent. It would not appear improper to note that the actions of respondent, which were made to appear without contradiction, were not such as would ordinarily be expected in the transaction of such business by a banking organization. At the outset there appears fourteen years of inactivity on the part of the bank starting immediately before the date of the notes sued upon. It would not appear unwarranted to assume that ordinarily in such a transaction as is disclosed by the record, the renewal notes would have been entered upon the books of the bank, but such record appears not to have been available although called for, former notes renewed would have been returned, the chattel mortgage securing the former note would have been either released, assigned or returned to Randall or a new mortgage taken and the old released, and some request would have been made looking to payment during the fourteen years following. The record conclusively shows that the court was in error in finding Randall's testimony to be false and that the notes had

been delivered, and the judgment against appellant A. E. Randall should therefore be reversed and the case dismissed.

In view of the conclusion reached it follows that the judgment against Estella W. Randall should likewise be reversed and the attachment discharged, it being unnecessary to pass upon other assignments of error.

The judgment is reversed and the cause remanded with instructions to dismiss the action. Costs awarded to appellants.

Ailshie, C. J., Givens and Holden, JJ., and Winstead, D. J., concur.

Morgan, J., deeming himself to be disqualified, did not sit in the case nor participate in the opinion.

Petition for rehearing denied.