297 P.2d 284

**NATIONAL PRODUCE DISTRIBUTORS, Inc., a corporation, Plaintiff-Respondent,**

v.

**Merle GRUBE, Defendant-Appellant.**

No. 8370.

Supreme Court of Idaho.

May 7, 1956.

34

Reginald R. Reeves, Idaho Falls, for respondent.

Ralph Litton, Willard C. Burton, St. Anthony, for appellant.

**TAYLOR, Chief Justice.**

March 14, 1953, plaintiff (respondent) as buyer entered into a contract with defendant (appellant) as seller. The provisions of the contract, material here, are as follows:

"The Buyer agrees to purchase and the Seller agrees to sell and deliver unto the Buyer the following described farm produce under the terms, covenants and conditions hereinafter set out.

"Commodity. Potatoes.

"Quantity. 60 acres.

"Price. $1.50 on US 1's & 75¢ on US 2's on ½ crop.

"Date and place of delivery. At harvest Ashton warehouse.

"Grade or Class. US 1's & 2's

"Method of payment. $100 per acre down. Balance when graded out or loaded.

\* \* \* \* \* \*

"Special conditions: The other half of this crop to be handled by the buyer at approx. 70¢ handling charge. The seller to furnish a first crop mortgage. If he has no storage he is to store in the buyer's storage and pay storage fee."

April 2, 1953, the defendant and his wife executed and delivered to the plaintiff a promissory note, secured by a chattel mortgage on the potato crop, for the sum of $6,000 payable November 1, 1953, without interest. Presumably the note was given to evidence the down payment provided for in the sales contract.

Defendant planted, cultivated and harvested 60 acres of potatoes as contemplated by the contract. Approximately half of the crop was delivered to plaintiff at its warehouse in Ashton. The other half was stored in the Davidson cellar near Ashton, rented by defendant. Thereafter, during the course of the marketing season, plaintiff sorted the potatoes stored in its warehouse and sold the resulting No. 1's and No. 2's and delivered the culls to a starch factory in the name of the defendant. Defendant acknowledged receipt of the check in payment from the starch factory. The amount thereof was insignificant so far as the question here is concerned. Plaintiff then moved its sorting crew to the Davidson cellar and in the same manner had sorted out and sold the No. 1's and 2's from one quarter or more of the potatoes there stored, when sorting for commercial 1's and 2's was discontinued at the request of the defendant. Thereafter the remainder

were sorted, tagged and sold for seed. After deducting costs and expenses involved in the sorting and marketing, plaintiff credited defendant with the sum of $1,471.87 and brought this action to collect a balance of $4,528.13.

In his answer and upon the trial defendant contended that he delivered all the potatoes grown on the 60 acre tract to the plaintiff, as agreed, and that the potatoes delivered were sufficient in quantity and quality to pay the note in full. Specifically, his testimony and that of his witnesses is to the effect that plaintiff sorted the potatoes in its warehouse and part of those in the Davidson cellar for No. 1's and 2's without his permission and against his will when it was known that the potatoes, because they were small, would not and did not sort more than 10 to 15% No. 1's and an insignificant quantity of No. 2's; that 85 to 90% were disposed of as culls and sent to the starch factory without defendant's knowledge or consent; that the potatoes had been grown, inspected and approved for certification as seed; that they were eligible for seed packing and certification when delivered to plaintiff; that had plaintiff packed them for seed the crop would have sorted out 95% blue tag seed.

It is apparent from the evidence that the parties did not adhere strictly to the terms of the contract above quoted, but modified it in anticipation of possible seed production.

Plaintiff's manager at Ashton testified they tried to grade them for No. 1's and 2's, but were unsuccessful because of wireworm damage, and that the parties then agreed to sell the remainder for seed. He also testified some of the No. 1's sorted out were sold at the market price of $1 per cwt., and some of the No. 2's at the market price of 25¢ per cwt., contrary to the contract, but with defendant's consent. The defendant denied giving such consent.

■■ Under the contract it would appear the title to the No. 1's and 2's would vest in the purchaser upon delivery, and as to half the crop it would have the right to sort and sell as it did, but at the contract price and not at the market; and all potatoes which did not grade as No. 1's and 2's would remain the property of, and subject to disposition by, the defendant, or by plaintiff with defendant's consent. As to the other half of the crop, it would appear from the special conditions, only the handling and storage charges were fixed, and the ultimate grading and disposition left to subsequent agreement.

On his cross-examination, defendant testified as follows:

"Q. Did you think you owed National money?

"A. Well, I knew the potatoes didn't pay off."

■ In view of the construction placed upon the contract by the parties in their pleadings and upon the trial, the trial court

properly submitted the case to the jury upon the issue as to whether the defendant had delivered sufficient potatoes to pay the note. The jury found for the defendant.

Motion for new trial was made upon the ground, among others, that the evidence was insufficient to justify the verdict, in that the evidence shows that defendant was indebted to plaintiff "by defendant's own admission at the trial".

In the order granting a new trial the court specified the ground, to-wit: " * * * and it appearing that the defendant admitted on the witness stand that he owed the plaintiff some money, the verdict of the jury for the defendant, and against the plaintiff, must be set aside and the plaintiff granted a new trial."

If "the court in the order granting a new trial expressly states the grounds upon which it is granted this court on appeal will determine the appeal upon the issue of whether the particular ground stated would justify the granting of motion." Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021, 1023, and cases there cited. Guided by this rule, we have examined the evidence to determine whether the order was justified on the ground stated. Defendant's testimony is to the effect that had the potatoes delivered been packed and marketed as requested by him, the return would have been sufficient to pay the note.

"A. I figured that all them culls going down the cull chute that I got a pretty raw deal there, all them good potatoes going down that cull chute, where in a seed pack they would have packed out good.

"Q. * * * Now, Mr. Grube, if these potatoes had been properly packed, in your opinion would they have paid off the bill or close to it? A. Well, I think pretty close to it, yes.

"Q. When you testified that you knew you owed them money, that was on account of this great waste? A. That's right.

"Q. That had taken place? A. Yes."

▉ Plaintiff's only witness, its manager at Ashton, admitted that the potatoes were eligible for packing and certification for seed, and testified that those so packed sold for $1.50 and $2.00 per cwt. From this it appears that the jury was entitled to reject plaintiff's contention that defendant had admitted that he owed plaintiff money, and to construe his answer that he knew the potatoes didn't pay off to mean only that in the manner they were sorted, packed and sold, the proceeds were not sufficient to pay the note.

▉ The evidence being substantial, competent, and ample to support the jury's determination of the issue, it was error to set aside its verdict. §§ 10–105, 13–219, I.C.; Baillie v. City of Wallace, 22 Idaho

702, 127 P. 908; Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430; Atkinson v. Darling, 107 Kan. 229, 191 P. 486; 39 Am.Jur., New Trial, §§ 129, 130, 132, 133, 134, and 137; 66 C.J.S., New Trial, §§ 70 and 71.

The order appealed from is reversed and the cause is remanded with instructions to reinstate the judgment in favor of the defendant.

Costs to appellant.

KEETON, ANDERSON, and SMITH, JJ., and BAKER, District Judge, concur.