456 P.2d 779

**Henry A. ROSENBERG and Mary Rosenberg, husband and wife, Plaintiffs-Respondents,**

v.

**Carl TOETLY, Defendant-Appellant.**

**No. 10255.**

Supreme Court of Idaho.

June 27, 1969.

Ware, Stellmon & O'Connell, Lewiston, for appellant.

Philip E. Peterson, Lewiston, for appellees.

McFADDEN, Chief Justice.

Mr. and Mrs. Henry Rosenberg, the respondents herein, instituted this action against Mr. Carl Toetly, the appellant, to recover damages they sustained in an au-

tomobile accident allegedly caused by Mr. Toetly's negligent operation of his automobile. Following a jury trial which resulted in a verdict for Mr. Toetly, the Rosenbergs moved for a new trial, which motion was granted. Mr. Toetly has appealed from the order granting a new trial.

On the evening of August 28, 1966, the respondents and Mrs. Richard Renner were returning to Lewiston, Idaho from an outing in Coeur d'Alene in an automobile driven by Mr. Richard Renner. They were proceeding south on U. S. Highway 95 when, about 1½ miles north of Plummer, Idaho, the Renner car collided with an automobile driven by the appellant, Carl Toetly, who was proceeding north on the same highway. As a result of the accident James Lyden, a passenger in the Toetly vehicle, was killed, and the Rosenbergs, passengers in the Renner vehicle, were seriously injured.

The pertinent facts are very much in controversy. In describing the circumstances surrounding the accident, the appellant testified that he was proceeding north on U. S. Highway 95 when he observed the Renner car, then about 300 feet away, begin to pass a vehicle driven by Mr. Isaac Sijohn. Toetly also testified that it appeared to him that Renner would not have time to complete his pass in time to avoid an accident and that he therefore slammed on his brakes in an effort to allow Renner time to return to his own lane. Toetly testified that he had very good brakes, but that when he applied them so hard at a speed of sixty miles per hour, his car veered uncontrollably to the left, bringing him across the center line and partially into Renner's proper lane of travel. Toetly further testified that despite his efforts to slow down, Renner was unable to return to his own lane and was almost directly over the center line at the time of impact.

The physical evidence and the testimony of the investigating officer, Sergeant Monahan, establishes that Toetly was indeed at least partially, if not completely, on the wrong side of the highway at the time of impact. It is contended this same evidence contradicts Toetly's testimony that the forceful braking action on his car caused him to swerve into the respondents' lane. Sergeant Monahan testified that the only skid marks found at the scene of the accident were the 137 feet of skid marks left by the Sijohn automobile. He testified that he found 66 feet of "brush marks" left by the Toetly vehicle. He described a "brush mark" as a

"* * * mark caused by centrifugal force. When a car makes a high speed turn the tires have a tendency to roll under the wheel and the outside edge of the tread leaves a very thin brush-type skid mark on the route of travel."

Although Sergeant Monahan testified that a brush mark can be left by a car traveling less than sixty miles per hour, he also testified that such a mark does not indicate a braking action on the automobile. Additionally, Toetly's testimony that the Renner car was directly over the center line at the time of the collision is contradicted by the physical evidence and the respondents' testimony which indicates that the Renner car was completely within its proper lane when the collision occurred.

Mr. Isaac Sijohn, called as a witness by Mr. Toetly testified that when the Renner car passed him, he recognized the possibility of a collision with the Toetly vehicle and applied his brakes and moved to the right in an attempt to allow Renner to return to his own lane of traffic. He further testified that his vehicle, which left 137 feet of skid marks, skidded past the place of impact and came to a stop only five feet short of the point at which the Renner and Toetly vehicles came to rest. He also testified that shattered glass from the collision of the other two vehicles fell on top of his car, scratched the paint, and broke three of the headlights. This testimony and the testimony regarding the skid marks was corroborated by the physical evidence and the testimony of Sergeant Monahan.

Toetly contends that Sijohn's testimony proves that Renner was negligent in passing Sijohn without sufficient distance to

safely pass before meeting the Toetly vehicle and that this negligence was the sole proximate cause of the accident. He contends that if, as the Rosenbergs contend, Renner had successfully passed the Sijohn automobile and returned to his own lane of traffic prior to the collision, Sijohn would not have had any difficulty stopping prior to the collision and would not have been so close to the collision at impact as to have his car covered with glass.

The respondent's version of the accident is quite different. They and Mrs. Renner testified that they did not recall passing any cars immediately prior to the accident, and Mr. Renner testified that although he passed the Sijohn car, he was easily back into his own lane long before he met the Toetly automobile. In fact, he testified he did not even see the Toetly car, which emerged from around a curve, until he was back into his own lane. As noted earlier, the physical evidence and the testimony of Sergeant Monahan strongly indicates that the Renner car was completely within the proper lane at the moment of impact.

Mr. Renner testified that he began to pass Sijohn shortly after coming over the crest of a hill and immediately at the end of a yellow no-passing line. The distance from the end of this line to the point of impact was described as 496 feet, 925 feet, and 1095 feet by each of the three different witnesses. There is, however, some indication that the use of the wrong scale on a map produced the erroneous testimony of 496 feet. The map, which is included in the exhibits on appeal, indicates that 925 feet is the correct distance between the end of the no-passing zone and the point of impact.

Mr. and Mrs. Renner and Mr. Rosenberg all testified that they observed the Toetly vehicle as it emerged from around a curve and that it appeared to be traveling at a high rate of speed and was swerving and "whipping" across the center line. They testified that it seemed for a moment that Toetly had control of the automobile, but that at the last instant the car swerved in front of them and caused the collision.

Mrs. Rosenberg saw the Toetly vehicle only an instant before impact, but she testified that it swerved across the center line in front of the Renner car. This testimony is corroborated by the evidence of brush marks left by the Toetly vehicle. None of the occupants of the Renner car noticed any unusual movement of the Renner car prior to the collision.

The respondents' evidence regarding the Toetly vehicle is contradicted by Toetly who testified that he was driving sixty miles per hour and by Mr. Sijohn who testified that he noticed nothing unusual about the Toetly vehicle. Sergeant Monahan testified that he found no evidence that Toetly was exceeding the sixty mile per hour speed limit.

The record also establishes that Toetly had stopped at two bars and consumed two beers approximately one and one-half hours prior to the accident. It was also brought out on cross-examination of Mr. Renner, over respondents' objections, that Renner had consumed two mixed drinks approximately six and one-half hours prior to the accident. Respondents objected to the evidence of Renner's drinking on the ground that any negligence on his part could not be imputed to them. The court, however, admitted the evidence, instructing the jury that it was to be considered only in regard to testing Renner's credibility and memory.

On the basis of this conflicting evidence the jury returned a unanimous verdict for the defendant. Following entry of a judgment on the verdict, the Rosenbergs moved for a new trial on the grounds that the verdict is contrary to the law contained in the court's instructions and the evidence; that the evidence shows the defendant was negligent; and that the respondents were prejudiced by admission of evidence of drinking by Renner prior to the accident. They also moved for judgment notwithstanding the verdict.

Following a hearing on the motions, the court granted a new trial on the grounds specified in the respondents' motion except the ground relating to evidence of

**138**

drinking. The appellant has appealed from the order granting a new trial.

■ It is well settled in this jurisdiction that the trial court has broad discretion in ruling on a motion for new trial, and an order granting or refusing to grant a new trial will not be disturbed absent a manifest abuse of that discretion. As this court stated in Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967),

"* * * this court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in *granting or refusing to grant* a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused." 91 Idaho at 671, 429 P.2d at 403.

To the same effect are Hall v. Johnson, 70 Idaho 190, 214 P.2d 467 (1950); Grimm v. Harper, 84 Idaho 220, 370 P.2d 197 (1962); Warren v. Eshelman, 88 Idaho, 496, 401 P.2d 539 (1965).

It is also pointed out in Blaine v. Byers, supra, that

"the general rule which prevails in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial." 91 Idaho at 671, 429 P.2d at 403.

■ It is equally well settled that in exercising the discretion entrusted to it, the trial court may set aside a verdict and grant a new trial whenever it appears to the trial court that the verdict is contrary to the law or evidence or that the verdict fails to render substantial justice. In Warren v. Eshelman, supra, this court affirmed an order granting a new trial, stating that

"When a trial court is of the opinion that a verdict, based on conflicting evidence, or even where there is no conflict, is not in accord with law or justice, he may grant a new trial. Grimm v. Harper, 84 Idaho 220, 370 P.2d 197. The reasons for such rule are recognized as being, (1) that the trial court, from seeing and hearing the witness, may have formed such a doubt as to the credibility of the testimony, or entertained such an impression from the surrounding circumstances and atmosphere of the trial, as to conclude that a fair and impartial trial was not had; and (2) that the exercise of such power is not an invasion of the jury's function to decide the facts, for upon granting a new trial the questions of fact will again be submitted to the jury for a decision. Mooney v. Carter, 114 Colo. 267, 160 P.2d 390 (1945)." 88 Idaho at 500, 401 P.2d at 541.

See also Ricard v. Gollen, 91 Idaho 335, 421 P.2d 130 (1966); Blaine v. Byers, supra; Hall v. Johnson, supra.[1]

---

[1] Jacksha v. Gilbert, 4 Idaho 738, 44 P. 555; Brossard v. Morgan, 6 Idaho 479, 56 P. 163; Jones v. Campbell, 11 Idaho 752, 84 P. 510. "It is sufficient to say that there is a substantial conflict and the rule is that, where the evidence presents a substantial conflict and the trial court, who saw and heard the witnesses and saw and heard all that was done and said in the case, has granted a new trial, his order will not be disturbed on appeal (citations omitted,) * * *." Buckle v. McConaghy, 12 Idaho 733, 88 P. 100; Wolfe v. Ridley, 17 Idaho 173, 104 P. 1014; Say v. Hodgin, 20 Idaho 64, 116 P. 410; Penninger Lateral Co., Ltd. v. Clark, 20 Idaho 166, 117 P. 764; Baillie v. City of Wallace, 22 Idaho 702, 127 P. 908; Boomer v. Isley, 42 Idaho 547, 246 P. 966, 47 A.L.R. 578; Turner v. First Nat. Bank of Bancroft, 42 Idaho 597, 248 P. 14; Tidd v. Northern Pac. Ry. Co., 46 Idaho 652, 270 P. 138; Stone v. Matthies, 49 Idaho 277, 287 P. 951; Marker v. McCue, 50 Idaho 462, 297 P. 401; Egbert v. Twin Falls Canal Co., 52 Idaho 39, 11 P.2d 360; Riggs v. Smith, 52 Idaho 43, 11 P.2d 358; In Estate of Randall, 60 Idaho 419, 93 P.2d 1, this court recognized the rule that granting of a new trial on conflicting evidence is discretionary with the trial court although there the order granting the new trial was reversed as being an abuse of discretion by the trial court. Poston v. Hollar, 64 Idaho 322, 132 P.2d 142; Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021 (Majority opinion.) Walker v. Distler, 78 Idaho 38, 296 P.2d 452; Woodland v. Lyon, 78 Idaho 79, 298 P.2d 380.

The appellant in the present case strenuously argues that where there is substantial competent evidence to support the jury's verdict it is an abuse of discretion for the trial court to set it aside. In such situations, he argues, the trial court is substituting its determination of the facts for that of the jury, and thus usurping the function of the jury. I.C. § 13–219; Archer v. Shields Lumber Co., 91 Idaho 861, 434 P.2d 79 (1967); Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430 (1949); National Produce Distrib. v. Grube, 78 Idaho 33, 297 P.2d 284 (1956). This court has repeatedly held, however, that the rule prohibiting an appellate court from reversing a judgment supported by substantial, competent evidence is not applicable to a trial court ruling on a motion for a new trial. Blaine v. Byers, supra; MacDonald v. Ogan, 61 Idaho 553, 104 P.2d 1106 (1940); Hall v. Johnson, supra; Grimm v. Harper, supra; Warren v. Eshelman, supra; Coast Transp., Inc. v. Stone, 79 Idaho 257, 313 P.2d 1073 (1957); Davis v. Rogers, 72 Idaho 33, 236 P.2d 1006 (1951).

In the instant case the trial court granted a new trial on the grounds that the verdict is contrary to the manifest weight of the evidence and to the law contained in the court's instructions. The order must be affirmed if it can be supported on either of these grounds. MacDonald v. Ogan, supra; Hall v. Johnson, supra; Warren v. Eshelman, supra.

The record reveals that although there is substantial evidence to support the jury's verdict, there is also substantial evidence to support the trial court's determination that the verdict is contrary to the manifest weight of the evidence.

The uncontroverted evidence establishes that Toetly was in the wrong lane at the time of the collision in violation of I.C. § 49–708, which requires vehicles to be driven upon the right half of a highway, except in certain instances which are not pertinent here. The unexplained violation of a positive statutory inhibition designed for the safety of persons using a highway is negligence per se. Bale v. Perryman, 85 Idaho 435, 380 P.2d 501 (1963); Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768 (1966); Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964). Although Toetly attempted to explain his presence in the wrong lane as the result of the forceful braking of his car in order to avoid an accident, there is rather strong physical evidence and testimony indicating that the brakes on the Toetly car were never applied, or at least not applied strongly enough to leave skid marks.

As was pointed out in Warren v. Eshelman, supra, and Hall v. Johnson, supra, the trial judge was in a position to see and hear the witnesses speak. He could observe their demeanor on the witness stand, and consequently was in a better position to judge their credibility and to weigh their testimony than is this court which has before it only a cold transcript. Given the testimony and physical evidence tending to support the trial court's opinion that Toetly was negligent for being in the wrong lane at the time of the collision and that this negligence was the proximate cause of the accident, we are unable to say that the granting of a new trial was an abuse of discretion.

It should be noted that it is not our intention in this opinion to express any view of the evidence as tending to compel a decision one way or the other. We hold only that the trial court did not abuse its discretion by ordering a new trial on the ground that the verdict is against the manifest weight of the evidence. Since the order must be affirmed on this ground, it is unnecessary to consider whether it can also be supported on the ground that the verdict is contrary to the law contained in the court's instructions. The order is therefore affirmed and the case is remanded to the district court for a new trial.

Costs to respondents.

McQUADE, DONALDSON, SHEPARD and SPEAR, JJ., concur.