603 P.2d 575

**Michael D. DINNEEN,
Plaintiff-Appellant,**

v.

**James C. FINCH, and City of Wardner, a
Municipal Corporation,
Defendants-Respondents.**

**No. 12462.**

Supreme Court of Idaho.

Nov. 28, 1979.

Robert H. Whaley of Winston & Cashatt, Spokane, Wash., Michael E. McNichols, Orofino, for plaintiff-appellant.

Paul D. McCabe, Samuel Eismann, Coeur d'Alene, for defendants-respondents.

BISTLINE, Justice.

In this case we are required to consider first, the function of a trial judge when faced with a motion for a new trial based upon inadequate damages and, second, the function of this Court in reviewing the decision on that motion. This question has not previously been explicitly decided by this Court.

On January 5, 1973, plaintiff Dinneen was injured in an accident while returning from a day of skiing at the Jackass (now Silverhorn) Ski Bowl area. He was one of two passengers in a 1973 Chevrolet Blazer

driven by defendant Finch. (The other passenger was killed and neither his heirs nor his estate are involved in this action.) Finch apparently lost control of the vehicle on an unprotected sharp turn and went off the road and 600 feet down a steep embankment. Dinneen was thrown out about half way down as the car rolled over and over, and the fiberglass top was torn off. He had to be dragged up the hill on a "sled" made from the ripped top.

Dinneen spent 11 days in the hospital and was then taken home, where he still required a hospital bed. He was bedridden, requiring assistance to do virtually anything, and then spent more time on crutches, for a total of about two months. His injuries included two broken ribs (broken in *back*, apparently more traumatic), a broken pelvis (which healed out of alignment), a separated sacro-iliac joint that later fused,[1] temporary paralysis of the hand, and two collapsed lungs, along with assorted bruises. He required several blood transfusions. All counsel stipulated to the reasonableness of medical expenses of $1,950.55. Dinneen also claimed lost personal property of approximately $510.

Dinneen sued Finch, the City of Wardner (which had annexed the road and ski area), and the ski bowl association. Dinneen admitted he sued Finch only for consistency due to the repeal of the guest statute in Idaho. Finch crossclaimed against the other defendants. Wardner filed a third party action against the City of Kellogg.

The trial involved the two typical issues of liability and damages. Other than the uncontroverted specials the testimony on damages was directed to Dinneen's permanent disability and lost wages. Testimony showed he had been an athlete in high school and college, placing several times in the Big Sky Conference wrestling tournament. He had worked as a laborer for a construction company over the summers and then returned there after graduation to operate heavy equipment. His employer,

one Redding, said that before the accident he was in "very good physical condition . . . very strong . . . fast and agile . . . a better than average worker." After the accident, according to Dinneen, heavy exertion caused him pain. He could downhill ski again but did not do it as much, he tried but could not water ski, and he gave up motorcycle trail-riding as too painful. He claimed operating the construction equipment and in fact any prolonged sitting was painful. Redding stated that Dinneen was "not in very good physical condition" after the accident and didn't have the same production capability. Plaintiff's medical expert (an orthopedist who did not treat him) rated him as 15% disabled of the whole man. A defense physician claimed there was *no* permanent disability since Dinneen could do all he did before and had not told him of any pain. On cross-examination he admitted that there would have been excruciating pain for months, that even after that time pain on heavy exertion would be consistent with the injuries, and that he had not tested Dinneen under such a condition of heavy exertion.

The testimony on lost wages showed that Dinneen was not working at the time of the accident. However, he testified that his layoff was only temporary, since the job had stopped due to frozen ground, and that he would return as soon as Redding called. Redding confirmed this and testified that he had work available, and, but for the accident would have called Dinneen back January 16 for full time work from then on. Dinneen testified that he was able to and did return to work in June, at which time he earned $6.85 per hour. The defense argued that Dinneen's earnings in 1973 exceeded 1972, and hence no lost wages were shown. However, Dinneen had also missed three months of 1972 due to knee surgery not related to this case. Eventually Dinneen decided he could not function satisfactorily as an operating engineer. He returned to school in business and at the time

---

1. This "joint" apparently does not affect motion much but rather acts as a shock absorber for the legs. It is located in the lower back.

of trial was an accounting clerk in Connecticut for Morrison-Knudson.

The court requested special verdicts of the jury which were answered as follows: As to Dinneen, the jury apportioned negligence:

| | |
|---|---|
| Dinneen | 0 |
| Finch | 50% |
| Wardner | 50% |
| Jackass Ski Bowl | 0 |

The jury assessed damages of $3,000 in a nine-person verdict (all the others being unanimous). As to Finch the jury found the following proportions:

| | |
|---|---|
| Finch | 100% |
| Jackass Ski Bowl | 0 |

The jury set Finch's damages at zero. The special verdict form did not include Wardner at all. (As to both verdicts, the jury found no contribution due Wardner from Kellogg.) Judgment was accordingly entered for Dinneen for $3,000 against Finch and Wardner. Dinneen was also awarded $449.65 in costs against those defendants but assessed $493.90 in costs payable to Jackass Ski Bowl.

Dinneen requested a new trial on either damages or all issues, on the grounds that the verdict was inadequate and appeared to have been given under the influence of passion or prejudice under I.R.C.P. 59(a)(5). The district court denied this motion. Although he found the special damages of $2,460.55 to be uncontroverted, he ruled that the jury could have disregarded the evidence on lost wages. Since they did give an amount above the specials, albeit small, the judge was not "convinced that the jury did not make an award for pain and suffering." Dinneen appealed, claiming that the damages awarded were inadequate, urging that the district court should have so held, and that this Court should so hold. Liability is not raised as an issue on appeal by any party.

Under Rule 59(a)(5) a new trial may be granted for "Excessive damages or inadequate damages, appearing to have been given under the influence of passion or preju-

dice." This rule is of fairly recent origin, having become effective January 1, 1975. The prior Rule 59(a) referred to statutory grounds for granting a new trial, contained in I.C. § 10–602. Among these were excessive damages, but inadequate damages were not included as grounds for a new trial. In the short tenure of the new rule, this Court has not specifically passed upon the function of a trial judge in ruling upon a motion for a new trial premised upon a challenge of inadequate damages, nor has it passed upon the standard to be utilized in this Court in reviewing an order denying a new trial so based.

In order to resolve these questions we necessarily consider whether those functions are the same in cases of inadequate damages as they are in cases of excessive damages. Perceiving no reason for distinguishing one from the other, we hold that the same review should be made whether the claim is that the damages are inadequate or that the damages are excessive.[2] In the latter situation, our case law is well established.

In *Mendenhall v. MacGregor Triangle Co.*, 83 Idaho 145, 358 P.2d 860 (1961), Justice McFadden wrote for the Court:

"The determination of the question of excessiveness of an award by the jury first requires of the trial judge an examination as to the sufficiency of the record to sustain the award; then if he does determine the record is insufficient to sustain the award, he must next determine the amount of the award the record does sustain. The determination of proper recompense for pain and suffering in a personal injury action is one of great difficulty to the trial court. While such a determination in the first instance has been recognized repeatedly by this court as peculiarly within the province of the jury, . . . *yet the trial court has the responsibility to weigh the evidence and make the determination whether the evidence supports the verdict.*" (Emphasis added)

**2.** We need not yet decide whether the two cases are entirely symmetrical, *i. e.*, whether

additur as well as remittitur is permissible, for no additur was requested in this case.

83 Idaho at 150, 358 P.2d at 862 (citations omitted).

The *Mendenhall* case quoted *Checketts v. Bowman*, 70 Idaho 463, 220 P.2d 682 (1950), and *Bond v. United Railroads*, 159 Cal. 270, 113 P. 366 (1911), which respectively state:

> "The remedy for excessive verdicts rests largely with the trial judge, *whose duty it is to carefully weigh the evidence* and not allow a verdict to stand for a greater amount than the evidence will reasonably justify, (citing cases)." (Emphasis added)

> " * * * We have cause to fear that the trial courts sometimes act on the theory that they can shift the responsibility in this matter to the appellate court, and that an excessive verdict can be corrected on appeal. This is a mistake. Our power over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. . . . Practically, the trial court must bear the whole responsibility in every case."

*Mendenhall, supra*, 83 Idaho at 150–51, 358 P.2d at 862–63.

In a more recent case, *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967), the Court took the pains to repeat the foregoing statements from *Mendenhall, Checketts* and *Bond*, and proceeded to specify the trial judge's function in ruling on excessive damages claims:

> "Amount of damages is a question of fact, which is for the jury in the first instance and secondly for the trial judge on a motion for a new trial; and the trial judge, in this regard, has been likened to a thirteenth juror. . . . *The rule that where there is any competent evidence, though conflicting, to sustain the verdict, the verdict will not be set aside has no application to a trial court in passing upon a motion for a new trial . . . .* Rather the discretion with which the trial judge is entrusted is a sound legal or judicial discretion, and the trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice. . . . ." (Emphasis added)

91 Idaho at 670–71, 429 P.2d at 402–03 (citations omitted). *Mendenhall, Checketts, and Blaine* were all pronouncements of a unanimous court.

█ It is true that in cases involving the amount of excessive damages, there may be a question of sufficiency of the evidence to sustain those damages, as mentioned in *Mendenhall*, and this will be especially so in property damage cases. Where the contention is that the award is so great as to appear to have been given by jurors activated by passion or prejudice, a more narrow question is presented within the confines of a Rule 59(a)(5) motion, and the question to be answered is *not* one of law, "since the Idaho cases make plain that the trial judge is not restricted 'as a matter of law' in considering excessive verdicts." *Blaine v. Byers, supra*, 91 Idaho at 670, 429 P.2d at 402. The question is answered only by a *weighing* of the evidence, and considerations of doing substantial justice. That is the function of the trial court, conferring upon that court a power and commensurate obligation unequaled elsewhere in civil cases tried to a jury.

█ In ruling on such a motion, it is not required that the movant must be able to point to the record of proceedings and demonstrate some occurrence which created jury passion or prejudice. This is true whether the Rule 59(a)(5) motion for a new trial is by a defendant complaining of an excessive award or by a plaintiff complaining of an inadequate award. Trial courts, unlike jurors, have the advantage of having heard *and determined* many hundreds of damage claims. A trial court in a jury trial hears exactly the same evidence as the jury hears, and makes his own inward assessments of credibility and weight. So, when after a trial the jury returns a verdict

which is thereafter assailed, either as excessive or as inadequate, the trial court's judgment is then called into play, requiring of him a *weighing* of the evidence. The sole question on a Rule 59(a)(5) motion is the amount of the jury's damage award, as compared to the amount of damages the trial court on his view of the evidence would have awarded. Where the disparity is so great as to suggest, but not necessarily establish, that the award is what might be expected of a jury acting under the influence of passion or prejudice, the court will in the interests of justice grant a new trial or, alternatively, as a condition to denying the motion, order a remittitur, and if permissible by statutory or case law, an additur.

The importance of the trial court's function on such a motion cannot be overestimated. As suggested in *Blaine v. Byers, supra,* it simply will not do for a trial court to sidestep the issue with expectation that the appellate court will resolve the matter anyway. For one thing as was so well pointed out in *Mendenhall, supra,* Rule 59(a)(5) motions place the whole responsibility on a trial court which court, not this, is the proper court to make a determination which necessarily entails *a weighing* of the evidence. The extent of that responsibility, and power, was well stated by Justice McFadden in writing for a unanimous Court:

> "[T]he trial court may set aside a verdict and *grant a new trial whenever* it appears to the trial court that the verdict is contrary to the law or evidence or that *the verdict fails to render substantial justice.* . . .
>
> . . . . . .
>
> "[T]he trial judge was in a position to see and hear the witnesses speak. He could observe their demeanor on the witness stand, and consequently was in a better position *to judge their credibility and to weigh their testimony* than is this court . . . ." (Emphasis added)

*Rosenberg v. Toetly,* 93 Idaho 135, 138–139, 456 P.2d 779, 782–783 (1969).

Therein, where it was contended that "where there is substantial competent evidence to support the jury's verdict it is an abuse of discretion for the trial court to set it aside" (93 Idaho at 139, 456 P.2d at 783), and that a trial court doing so is thus usurping the function of the jury, this Court held that the rule prohibiting an appellate court from reversing a district court judgment so supported "is not applicable to a trial court ruling on a motion for a new trial." *Id.*

Three years later the Court, speaking this time in an opinion authored by Justice Shepard, observed that it had many times, most recently in *Rosenberg v. Toetly, supra,* and in *Blaine v. Byers, supra,* said:

> " ' . . . this court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in *granting or refusing to grant* a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused.' " (Emphasis in original)

*Meissner v. Smith,* 94 Idaho 563, 566–67, 494 P.2d 567, 570–71 (1972).

█ It is clear, then, that this Court has been consistent in (1) recognizing the trial court's important function in passing on motions for new trial, and (2) upholding the trial court's grant or denial of such a motion unless the trial court has manifestly abused the wide discretion vested in it, or, as in *Meissner, supra,* misconceived the law or, as suggested in *Blaine v. Byers, supra,* unless the trial judge has applied a "question of law" rule to a decision which must be made as question of fact. That doctrine is sound, it is well established, and will be adhered to.

█ Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact

passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive "as a matter of law." *Blaine v. Byers, supra.* Additionally, the rule that a verdict will not be set aside when supported by substantial but conflicting evidence has no application to a trial court ruling upon a motion for a new trial. *Blaine, supra; Rosenberg v. Toetly,* 93 Idaho 135, 456 P.2d 779 (1969).

This review is the duty of the trial court and should not be left for appeal. The trial court has a far better opportunity to weigh the demeanor, credibility, and testimony of witnesses, and the persuasiveness of all the evidence. *Mendenhall v. MacGregor Triangle Co., supra; Rosenberg v. Toetly, supra.* Appellate review is more limited. While we must review the evidence, we are not in a position to "weigh" it as a trial court can. Rather, the power of this Court over excessive or inadequate damages exists only when the facts are such that the excess or inadequacy appears as a matter of law. *Blaine v. Byers, supra; Mendenhall v. MacGregor Triangle Co., supra,* citing *Bond v. United Railroads,* 159 Cal. 270, 113 P. 366 (1911).

Moreover, as both parties to this appeal have recognized, "This court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in granting or refusing to grant a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused." *Sanchotena v. Tower Co.,* 74 Idaho 541, 546, 264 P.2d 1021, 1024 (1953); *Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972). *Blaine v. Byers, supra; Rosenberg v. Toetly, supra.*

The evidence here was clear and uncontroverted. Dinneen's injuries were not disputed; it was stipulated that his medical bills were reasonable, and hence defendants may not now be heard to argue that such bills were unnecessary or that the evidence on such was conflicting. While other damages were not stipulated, they were just as obvious. Dinneen testified to lost personal property of a value of approximately $510, giving brand names and approximate cost of his lost equipment. The defendants introduced no evidence of new or replacement cost of those items.

The evidence on lost wages was equally clear. While Dinneen was unemployed at the time of the accident, he intended to return as soon as possible. His employer stated he would have called Dinneen to return on January 16, eleven days after the accident, at a salary of $6.85 per hour. The defense expert witness testified that Dinneen was unable to work for months, and had suffered "excruciating" pain for six weeks or more. It cannot be said in light of the testimony that lost wages were speculative, as the defense argues.

The trial court noted, as have we, that the evidence on medical expenses and lost personal property was uncontradicted. He also noted that the jury verdict was only approximately $540 over that total. In refusing to grant a new trial, he stated that because the evidence on lost wages was speculative, the jury could disregard it, and since they had made *some* award for pain and suffering there were no adequate grounds for a new trial.

It is true that the general rule is that testimony is for the jury to weigh, to consider or disregard, *Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1966), and that a jury verdict supported by substantial but conflicting evidence will not be set aside, *Stoddard v. Nelson,* 99 Idaho 293, 581 P.2d 339 (1978).

However, the evidence here was *not* conflicting, and another well established rule governs this situation:

"The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or

trial. *Manley v. Harvey Lumber Co.*, 175 Minn. 489, 221 N.W. 913, 914. In *Jeffrey v. Trouse*, 100 Mont. 538, 50 Pac.2d 872, 874, it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of a witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability. And, in *Arundel v. Turk*, 16 Cal.App.2d 293, 60 Pac.2d 486, 487, 488, the rule is stated thus: 'Testimony which is inherently improbable may be disregarded, * * * but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions.' "

*Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447-48, 74 P.2d 171, 175 (1937). *See also: First Trust & Savings Bank v. Randall*, 59 Idaho 705, 89 P.2d 741 (1939); *Idaho Times Publishing Co. v. Industrial Accident Board*, 63 Idaho 720, 126 P.2d 573 (1942); *In re Odberg's Estate*, 67 Idaho 447, 182 P.2d 945 (1947); *National Ro-Tile Corp. v. Loomis*, 82 Idaho 65, 350 P.2d 217 (1960); *Olsen v. Hawkins*, 90 Idaho 28, 408 P.2d 462 (1965); *Hook v. Horner*, 95 Idaho 657, 517 P.2d 554 (1973); *In re Estate of Stibor*, 96 Idaho 162, 525 P.2d 357 (1974); *Russ v. Brown*, 96 Idaho 369, 529 P.2d 765 (1974); *Krasselt v. Koester*, 99 Idaho 124, 578 P.2d 240 (1978).

■ We hold that this rule applies here. Nothing in the record shows that Dinneen was anything less than a credible witness. His testimony was not inherently improbable; to the contrary, it was almost completely confirmed by other witnesses including the expert medical witness for the defense. He was not impeached and the surrounding circumstances support him. For the jury, and later the trial judge, to disregard his testimony on any point, including lost wages, was error. The resulting verdict, allowing only $540 over the uncontradicted medical expenses and lost property with apparently no lost wages at all, is so small as to "shock" our collective "conscience." In our view the trial court should

have concluded that such a small award suggested a verdict appearing to have been rendered under the influence of passion or prejudice. Accordingly, we hold there was error in not granting a new trial.

Our holding here is not without precedent. It is true that nearly all of the prior cases on incorrect damages have concerned excessive damages and that for the most part we have affirmed decisions of the district courts as to whether a verdict was excessive and whether a new trial was appropriate. However, there are some exceptions. In *Mendenhall v. MacGregor Triangle Co., supra*, we remanded a case for reconsideration of the denial of a new trial. There the district court apparently felt the verdict was too high but relied on an Oklahoma case to uphold it against the motion for new trial. In *Meissner v. Smith, supra*, a district court ordered a new trial conditioned upon plaintiff's accepting a remittitur. We reversed and remanded, holding that the district court had improperly relied on a prior case to set a maximum recovery for wrongful death of a minor child, although it did have the power to examine the verdict and reduce it to a just amount if it was found excessive. In *Ryals v. Broadbent Development Co.*, 98 Idaho 392, 565 P.2d 982 (1977), we reversed the order of a new trial conditioned on remittitur where the district judge had substituted his own judgment on the causation of plaintiff's injuries from the comparative negligence of the parties for that of the jury.

Dinneen brings to our attention a case concerning inadequate damages in Idaho jurisprudence, and that arising before the advent of the new Rule 59. In *Fignani v. City of Lewiston*, 94 Idaho 196, 484 P.2d 1036 (1971), plaintiffs moved for a new trial under former Rule 59 on the grounds that the evidence was "insufficient to justify the verdict in that the evidence . . . clearly showed that plaintiffs' special damages . . . exceeded the award given by the jury." 94 Idaho at 197, 484 P.2d at 1037. The district court agreed and grant-

ed a new trial conditioned upon an *additur*.[3] On appeal by the defendants the grant of a new trial was affirmed. This Court noted that the evidence clearly showed that of the $2,000 jury verdict at least $1,979.37 was special damages, leaving a maximum of $20.63 for pain and suffering. In the case at bar it is clear, as above, that the special damages, including lost wages, and not taking into account pain and suffering, must exceed the verdict given by the jury. Accordingly, we conclude that Dinneen is entitled to a retrial on the issue of damages.

█ On the state of this particular record, however, we specifically authorize the trial court to re-examine the record, and based thereupon, and upon his own recollection and trial notes, determine whether a new trial should also be had on issues of liability. *Mendenhall v. MacGregor Triangle Company, supra.* See also *Monaco v. Bennion*, 99 Idaho 529, 585 P.2d 608 (1978).

The order denying the motion for a new trial is reversed and the cause remanded for further proceedings in conformance with the views herein expressed.

Costs awarded to appellant.

DONALDSON, C. J., and BAKES and McFADDEN, JJ., concur.

SHEPARD, Justice, dissenting.

I disagree with the majority opinion not only as to the result obtained, but also as to the philosophy espoused in reaching that result. I must also disagree with the vague and amorphous language used in the majority discussion of a "standard" to be applied by a trial judge when reviewing jury verdicts. In my judgment the majority opinion not only permits and invites a trial judge to invade the province of a jury, but indeed requires such invasion in many cases wherein a trial judge, if sitting to try the facts, might have arrived at a different result.

In the instant case, in my opinion, the trial judge's denial of the motion for a new trial can only be taken as an indication that he was unwilling to substitute his view of controverted facts for that of the jury. At trial a defense physician who had examined the plaintiff testified that the plaintiff had suffered no serious disability resulting from the accident. That physician also testified that the plaintiff's lower back region was normal; that his neck and spinal areas were normal and apparently causing no pain; that movement in his pelvic area was normal and apparently painless; and that his rib fractures had completely healed. The plaintiff himself testified that approximately four months after the accident, he skied, rode trail bikes, and lifted weights. My view of the record indicates evidence, albeit controverted, that plaintiff did not suffer any permanent injury or suffer continuing pain from the accident. Although there was testimony regarding lost wages, the plaintiff himself testified that he had been laid off work at the time of the accident and that he made about the same amount of money in 1973 (the year of the accident) as he did in 1972.

The above briefly outlined evidence is clearly in contradiction with much of that set out in the majority opinion, and the jury was faced with the task of resolving those conflicts in its determination of damages. The trial judge, of course, sat through the trial, saw the same witnesses, and heard the same evidence as the jury. I believe he correctly allowed the jury verdict to stand as the result of its resolution of the conflicting evidence.

The determination of personal injury damages, particularly in the area of pain and suffering, has long been recognized as peculiarly within the expertise of a jury. *Mendenhall v. MacGregor Triangle Co.*, 83 Idaho 145, 358 P.2d 860 (1961). Our statutes provide that the jury be the exclusive judge of the credibility of witnesses. I.C. § 9–201. Nevertheless, a jury will err and the trial judge performs an important function when jury error occurs. I.R.C.P. 59(a)(5), at issue in this case, gives the trial judge authority to order a new trial when the jury verdict was the result of passion or

---

**3.** As above, additur is not an issue in the instant case.

prejudice. The majority interprets I.R.C.P. 59(a)(5) as follows:

"The sole question on a Rule 59(a)(5) motion is the amount of the jury's damage award, as compared to the amount of damages the trial court *on his view of the evidence would have awarded.* Where the disparity is so great *as to suggest, but not necessarily establish,* that the award is what *might be expected* of a jury acting under the influence of passion or prejudice, the court will in the interests of justice grant a new trial * * *.

\* \* \* \* \* \*

*It need not be proven* that there was in fact passion or prejudice nor is it necessary to point to such in the record. *The appearance of such is sufficient.*" (Emphasis added.)

Thereunder a trial judge need not establish that the jury award resulted from passion or prejudice; a mere "suggestion" or "appearance" is all that is needed for a trial judge to overturn a jury award on the basis that it was too low or too high. This, of course, allows a trial judge to substitute his opinion for that of a jury. Such a practice has been consistently condemned both in Idaho and elsewhere. *See, e. g., Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972); *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967); 58 Am.Jur.2d New Trial § 155.

The majority opinion cites cases for the proposition that a trial judge in Idaho has extremely broad discretion to override jury verdicts when he feels that "justice" has not been done. That concept has been the focus of a continuing and on-going controversy within the membership of this Court for many years. *Compare National Produce Distributors v. Grube,* 78 Idaho 33, 297 P.2d 284 (1956) *and Baldwin v. Ewing,* 69 Idaho 176, 204 P.2d 430 (1949) *with Deshazer v. Tompkins,* 93 Idaho 267, 460 P.2d 402 (1969) (Shepard, J., dissenting) *and Sanchotena v. Tower Co.,* 74 Idaho 541, 264 P.2d 1021 (1953) (Taylor, J., dissenting).

However, that conflict may still rage. The last pronouncement of this Court, prior to today, had indicated that in ruling upon a motion for a new trial, the trial judge sits as a thirteenth juror with the responsibility at a motion for new trial of insuring that justice was done. *Deshazer v. Tompkins, supra.* At this point in time, then, it is significant to inquire as to the function of the appellate court in reviewing the action of a trial court which has *denied* a motion for a new trial. As well stated by Justice McFadden:

"It is well settled in this jurisdiction that the trial court has broad discretion in ruling on a motion for new trial, and an order granting *or refusing* to grant a new trial will not be disturbed absent a *manifest abuse* of that discretion." *Rosenberg v. Toetly,* 93 Idaho 135, 138, 456 P.2d 779, 782 (1969) (Emphasis supplied).

and

"The test of the propriety of the court's action in such a case is whether it clearly or manifestly abused its discretion, and in the absence of such abuse this court will not reverse that determination." *Deshazer v. Tompkins, supra,* 93 Idaho at 271, 460 P.2d at 406. *See Blaine v. Byers, supra.*

In sum, the majority opinion reverses the action of the trial judge here in denying a motion for a new trial not on the basis that he clearly and manifestly abused his discretion, but that the verdict of the jury, approved by the trial judge, in the view of the majority of this Court, was "too low" and, hence, must have resulted from passion and prejudice. Inferentially, of course, that assignment of passion and prejudice is assigned as much to the trial judge as to the jury.