518 P.2d 1

Bernice A. Holmes STOBIE, Individually, and Bernice A. Holmes as guardian ad litem for Charles David Holmes and Deborah Kay Holmes, minors, Plaintiff-Respondent,

v.

POTLATCH FORESTS, INC., a corporation, et al., Defendants-Appellants.

No. 11068.

Supreme Court of Idaho.

Dec. 21, 1973.

As Modified on Denial of Rehearing
Jan. 31, 1974.

Brian B. Kennedy, Robert E. Stoeve, Spokane, Wash., and Frank H. Powell, Coeur d'Alene, for appellants Payne and Walkup.

E. L. Miller, Coeur d'Alene, for appellant Potlatch Forests, Inc.

Gary M. Haman and Thomas A. Mitchell, Coeur d'Alene, for plaintiff-respondent.

DONALDSON, Chief Justice.

Charles Holmes was killed when a boat in which he was a passenger struck a log boom located on Lake Coeur d'Alene at approximately 1:15 a. m. on August 11, 1967. The deceased was on his way home from an outing held by the Coeur d'Alene Junior Chamber of Commerce at Arrow Point resort, located on the lake. All those attending made the journey from Coeur d'Alene to the resort by boat.

The outing lasted a greater part of the evening of August 10, 1967. A short business meeting was held before dinner. After dinner, those attending broke off into small groups to play either cards, horse shoes, ping pong, or other games. Liquor and beer were served during the course of the evening, but according to the bartender on duty that night none of those attending appeared intoxicated.

At about 1:00 a. m. on the morning of the eleventh, the deceased left the resort to return to Coeur d'Alene. He rode in a boat driven by defendant-appellant Richard Walkup. The boat belonged to defendant-appellant Wilma Payne, Walkup's mother. He had borrowed the boat for the occasion with her permission. Three other members of the Jaycees were also riding in the boat.

Rather than proceeding directly to Coeur d'Alene, which would require crossing the lake in a northwesterly direction, Walkup, who was the operator, decided to return the boat to its regular moorage site at Delevan's Marina, located on Bennet Bay. Bennet Bay is on the north shore of the lake several miles east from the city of Coeur d'Alene. Walkup intended to return the boat first and then take his passengers by car to Coeur d'Alene, where the trip had originated. In order to avoid swells common to that part of the lake during summer nights, Walkup proceeded in an easterly direction along the south shore of the lake. He intended to proceed east along the shore until directly across from Bennet Bay, and then proceed directly across the lake to his destination.

As the boat proceeded along the shore, it struck a log boom owned by defendant-appellant Potlatch Forests, Inc. Walkup and his other passengers testified that they were traveling at approximately ten to fifteen miles per hour at the time of the accident and that neither Walkup, who was driving, nor James Earin, a passenger who was riding in the front seat and helping to keep a lookout for obstructions in the water, were able to see the boom before the boat struck it. All those riding in the boat testified that the night was extremely dark for that time of the year.

The log boom which the boat struck was owned by defendant-appellant Potlatch Forests, Inc. The boom contained two to three million board feet of uncut logs. The logs were arranged in bundles held together by metal straps. Each bundle consisted of one truck load of logs. The bundles were encircled by two booms, which consisted of logs fastened end to end by chains.

Potlatch, as well as other lumber companies located on the lake, has been using the lake to store logs for many years. The bundles of logs are dumped into the St. Joe River at the town of St. Maries. A boom is formed and towed down the river to the south end of the lake. After reaching the lake, the booms are towed up the lake to its north end where they are anchored to log pilings driven between the low and high water marks on land owned by the company owning the boom. There they remain until needed at the mills.

The boom which the boat struck had been brought to its moorage site just two days before the accident. It was moored near the entrance to Squaw Bay and projected out into the lake a distance of some

five hundred and thirty feet. The bundles stood three to five feet out of the water.

After striking the boom, which was not marked by lights, the boat sailed over several bundles and came to rest at a point fifty-five feet from the edge of the boom. Decedent was thrown from the boat, suffering injuries from which he subsequently died. Decedent's wife, Bernice A. Holmes (Stobie)[1] then filed suit in her own behalf and as guardian ad litem for her children. She alleged that the death of decedent was caused by the negligence of Potlatch Forests, Inc. and Richard Walkup and that as owner of the boat, Wilma Payne would be liable for any negligence of Walkup.

The trial court, in its pretrial order, ruled that because Lake Coeur d'Alene is classified as a navigable body of water, 33 CFR § 2.34-1 (1967), federal maritime law would govern the suit. Jurisdiction was vested in the state court and suit could be brought under the Idaho wrongful death statute, I.C. § 5-311, because of the "savings to suitors clause" of the Judicial Act of 1789 (28 U.S.C. § 1333).

"The district courts shall have original jurisdiction, exclusive of the courts of the State, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

Under the applicable maritime regulations then in force, it was required that stable log booms located in or near a fairway or channel have lights. 33 CFR § 80.-32(b) (1967). At the trial, appellant Potlatch Forests, Inc., introduced the testimony of three expert witnesses who testified that the log boom which the boat struck was not, in their opinion, located in or near a fairway or channel. Before the case was submitted to the jury, the court gave the following instruction:

"You are instructed that a channel is a generic term applicable to any watercourse and is used to designate a customary and travelled highway. A fairway is a navigable portion of a body of water upon which vessels of commerce and other boats habitually move."

The jury was also instructed as to the statutory duty of care imposed upon the operator of a boat by I.C. § 39-2509. The jury, by way of answers to special interrogatories submitted to it because of the federal comparative negligence standard, returned a verdict finding that none of the defendants (appellants) were negligent. Judgment was duly entered. The trial court then granted respondent's motion for a new trial, denying the alternative motion for judgment notwithstanding the verdict. The motion was made pursuant to I.R.C.P. 59(a), (b) and I.C. § 10-602(6), (7). The court granted the motion for a new trial on the grounds that the answers given by the jury to the interrogatories were contradictory, mutually exclusive, and not supported by the evidence. The court reasoned that if the log boom was not located in or near a fairway or channel, Walkup would have been negligent in operating the boat in that area on such a dark night. If the boom was located in or near a fairway or channel, so that Walkup would not have been negligent in operating the boat where he did, then Potlatch Forests would have been negligent as a matter of law for not maintaining lights on the boom.

All three defendants in the case have appealed from the order of the trial court granting respondent a new trial. It is important to note that none of the appellants have assigned as error the pretrial order of the court declaring that substantive law of the suit would be governed by federal maritime law.[2] Nor have any of them assigned as error any of the instructions given to the jury or any

---

1. She subsequently remarried.

2. Procedural matters would, of course, still be governed by Idaho law. *See* Central Vermont R. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1914).

rulings made by the court during the course of the trial. They have made several assignments of error, however, which can be summarized as follows: May a state court in a suit governed by federal maritime law judge the validity of the jury's verdict according to state standards or must it apply the standards required by the Seventh Amendment to the Constitution of the United States?

 If this case was governed by state law, the action of the trial court would likely have been proper. As this court stated in Rosenberg v. Toetly, 93 Idaho 135, 138, 456 P.2d 779, 782 (1969):

> "It is equally well settled that in exercising the discretion entrusted to it, the trial court may set aside a verdict and grant a new trial whenever it appears to the trial court that the verdict is contrary to the law or evidence or that the verdict fails to render substantial justice."

However, appellants argue that the right to a trial by jury, as guaranteed by the Seventh Amendment to the Constitution of the United States, is a substantive right which cannot be abrogated in a suit brought in state court but controlled by federal maritime law. Therefore, they contend that it was improper for the trial court to grant a new trial where no errors of law have occurred at the trial but where the new trial is granted on the grounds that the verdict of the jury is not supported by the evidence or where the jury's answers to special interrogatories are inconsistent or mutually exclusive.

The Seventh Amendment provides as follows:

> "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury, shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

In Arnold v. Panhandle and Santa Fe Ry., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957) the United States Supreme Court faced the issue of whether the Seventh Amendment right to a jury trial applied to suits brought in state courts involving federal rights. In that case, an injured railroad car inspector brought suit under the Federal Employers' Liability Act (FELA) for damages resulting from his injuries. Suit was brought in state court, as authorized by the act. The jury returned a verdict in favor of the injured employee. The state Court of Appeals reversed the jury's verdict on the grounds that the jury's answers to special interrogatories were in conflict with its general verdict. After granting certiorari, the Supreme Court reversed the decision of the Court of Appeals and reinstated the verdict of the jury. In doing so, the court stated:

> "The petitioner having asserted federal rights governed by federal law, it is our duty under the Act to make certain that they are fully protected, as the Congress intended them to be. We therefore cannot accept interpretations that nullify their effectiveness, for ' * * * the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.' Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 14, 68 L.Ed. 143." 353 U.S. at 361, 77 S.Ct. at 841.

See also Sinclair v. Great Northern Ry., 94 Idaho 409, 489 P.2d 442 (1971).

Respondent argues that the Arnold case should not be controlling here since that case involved suit brought in state court under the FELA while the case before this Court involves federal maritime law. However, in Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 82 S. Ct. 780, 7 L.Ed.2d 798 (1962), the United States Supreme Court held that the Seventh Amendment right to a jury trial applied in suits involving maritime law. In that case, action was brought for damages resulting from injuries sustained by a longshoreman while unloading a cargo of burlap in the port of Philadelphia. He sued the shipowner in federal district court.

The shipowner impleaded the longshoreman's employer, contending that it would be liable for any judgment as a result of not furnishing the longshoreman with a safe place to work. The jury returned a verdict in favor of the longshoreman and, by way of answers to special interrogatories, found that the employer was entitled to indemnification from the shipowner. The Court of Appeals reversed that part of the judgment in favor of the employer on the grounds that the jury's answers to special interrogatories were inconsistent. After granting certiorari, the Supreme Court reversed the Court of Appeals and reinstated the verdict of the jury. In doing so, the Court stated:

"We might agree with the Court of Appeals had the questions of fact been left to us. But neither we nor the Court of Appeals can redetermine facts found by the jury any more than the District Court can predetermine them. For the Seventh Amendment says that 'no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.' " 369 U.S. at 358, 359, 82 S.Ct. at 783.

■ Thus, when suit is brought in state court alleging rights governed by federal maritime law, the Seventh Amendment right to a jury trial is applicable and the state courts are governed by the same standards as are the federal courts. In Lind v. Schenley Industries, Inc., 278 F.2d 79 (3rd Cir. 1960), suit was brought in federal district court to recover amounts allegedly due for commissions resulting from the sale of liquor. The jury returned a verdict in favor of the plaintiff. The trial court then granted judgment in favor of the defendant on the grounds that the evidence did not support the verdict. On appeal, the Court of Appeals reinstated the verdict of the jury, saying:

"But where no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge none-theless grants a new trial on the grounds that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes a duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to jury trial." 278 F.2d at 90.

In this case, the motion for a new trial was not granted because of any errors of law occurring during the trial or because some undesirable influence was introduced into the trial. It was granted on the grounds that the evidence did not support the verdict and the jury's answers to special interrogatories were inconsistent and mutually exclusive. In the *Atlantic* case, *supra,* the Supreme Court discussed the duty imposed upon the courts when considering the answers given by a jury in response to special interrogatories.

"Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment. Arnold v. Panhandle & S. F. R. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889. Cf. Dick v. New York Life Ins. Co., 359 U.S. 437, 446, 79 S.Ct. 921, 927, 3 L.Ed.2d 935." 369 U.S. at 364, 82 S.Ct. at 786.

■ In this case, there is sufficient evidence to support the verdict of the jury. The jury could reasonably have found

from the testimony that the log boom was not located in or near a fairway or channel so that Potlatch was not under a duty to maintain lights on it. In addition, the jury could have found that the defendant Walkup was operating the boat in a reasonable and prudent manner but, that because of the extreme darkness of the night, he became lost and struck the log boom. Thus, it is possible to view the jury's answers to the interrogatories as consistent and supported by the evidence in that this accident could have occurred without any negligence on the part of any of the defendants. While it is true that in this jurisdiction, as well as many others, it is reversible error to give an instruction on unavoidable accidents since this instruction only serves to confuse the jury, it is not error for the jury to find that an accident occurred without negligence. *See* Schaub v. Linehan, 92 Idaho 332, 442 P.2d 742 (1968). The jury in this case so found and under the applicable federal maritime law we are required to accept its findings. Therefore, the order of the trial court granting plaintiff a new trial is reversed and the verdict of the jury is reinstated. Costs to appellants.

SHEPARD, McQUADE, McFADDEN and BAKES, JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

Plaintiff-respondent, Bernice A. Holmes Stobie, has petitioned this Court for a rehearing on the grounds that under federal rules of appellate procedure, Federal Appellate Rule 4, no appeal can be taken from the action of a trial court granting a motion for a new trial. She argues that the Court was bound to apply this rule and dismiss the appeal. However, this Court is, only required to apply federal substantive law. Central Vermont R. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1914). Procedural law is governed by state practice. The right to appeal from a decision granting a new trial is procedural matter, Striebeck v. Employment Security Agency, 83 Idaho 531, 366 P.2d 589 (1961), and therefore governed by Idaho rules. The petition is denied.