715 P.2d 905

**Linda S. GRIFFITH,
Plaintiff-Respondent,**

v.

**William SCHMIDT and Jill Schmidt, husband and wife; Frank Schmidt and Jane Doe Schmidt, husband and wife, Defendants-Appellants.**

No. 15617.

Supreme Court of Idaho.

June 18, 1985.

On Rehearing Feb. 20, 1986.

Alan C. Stephens, of St. Clair, Hiller, Wood & McGrath, Chartered, Idaho Falls, for defendants-appellants.

Jon J. Shindurling, of May, May, Sudweeks, Shindurling & Stubbs, Twin Falls, for plaintiff-respondent.

BAKES, Justice.

A jury found plaintiff 80% contributorily negligent in a collision between her car and defendants' horses which were loose on the highway at night. The trial court granted a new trial to plaintiff, which ruling the defendants have appealed. Defendants also appealed the giving of certain jury instructions in the event that the grant of the new trial is affirmed.

On the evening May 3, 1979, plaintiff, then eighteen years old, helped to organize a Saturday night party at a sportsmen's access to the Big Lost River off U.S. Highway 93, approximately 3 miles north of Mackay, Idaho. Plaintiff was among the first to arrive around 10:30 p.m. After a while plaintiff, who was driving her own automobile, returned to town with her brother and a girlfriend. They picked up a guitar, a beer for the brother, and two mixed drinks ("screwdrivers") for the girlfriend. Having obtained these items, plaintiff and her passengers "cruised" the town and stopped to talk to two male friends who were in a pickup. Plaintiff informed the friends of the party at the sportsmen's access. Both vehicles left town at approximately the same time traveling north on

the highway toward the sportsmen's access.

Plaintiff testified that she had just passed her friends in the pickup and had been looking back at the pickup when she turned her head forward just prior to colliding with two of defendants' horses which were running loose on the highway. The car left the highway and traveled through a fence and field before coming to rest in a ditch. Plaintiff was rendered unconscious and was seriously injured with lacerations to the head and neck. The brother and girlfriend were in shock, but not seriously injured. The friends in the pickup removed the injured from the car and transported them to town where an ambulance with emergency personnel took them to hospitals in Arco and then to Idaho Falls. A deputy sheriff arrived at the scene after the injured were taken away. After he realized that the damaged car belonged to his stepdaughter, he left for the hospital without completing an investigation. The scene was then investigated the next afternoon by an Idaho state patrolman.

Plaintiff sued the owners of the horses, alleging that the horses were "unlawfully" on the highway due to defendants' negligence. At trial plaintiff's position was that defendants were strictly liable, barring contributory negligence as a defense. Defendants' position was that all reasonable care was exercised in enclosing the horses and that plaintiff was contributorily negligent based on allegations of exceeding the speed limit, driving inattentively, driving under the influence of alcohol, racing and failing to maintain brakes. Prior to submitting the case to the jury, the trial court ruled that defendants were negligent as a matter of law regardless of reasonable care exercised with the horses, but that this ruling did not bar contributory negligence as a defense. The trial court further ruled that substantial evidence existed to support jury instructions on all of defendants' theories of contributory negligence. The jury found plaintiff to be 80% negligent and defendants only 20% negligent, and fixed defendants' damages on their crossclaim at $1,250 for the loss of the horses. Judg-

ment was entered on the defendants' cross-claim.

In a subsequent order granting plaintiff's motion for a new trial, the trial court held that no substantial evidence existed to support the contributory negligence instructions based on driving under the influence, racing or failing to maintain brakes. The court reasoned that these instructions "likely caused the jury to accumulate speculated negligence on the part of plaintiff" so that the jury verdict of 80% negligence "was not justified and that a fair and impartial trial was not had." The defendant animal owners have appealed.

## I. *New Trial*

■ We first address the defendants' assignment of error that the grant of a new trial was improper. The trial court has broad discretion under I.R.C.P. 59(a) when determining whether to grant or deny a motion for new trial. As stated in *Dinneen v. Finch,* 100 Idaho 620, 626, 603 P.2d 575, 581 (1979):

"This Court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in granting or refusing to grant a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused."

Defendants argue that each of the several contributory negligence instructions were supported by substantial competent evidence, and therefore the trial court's contrary conclusion as a basis for a new trial was reversible error. There is no need for this Court to independently review each of the several contributory negligence issues and conclude whether or not substantial competent evidence existed to support an instruction on that particular issue. At best, each presents an extremely close question and we need not take a position on each issue to affirm the grant of a new trial. It is sufficient to say that the trial court's conclusion that the cumulative effect of the instructions "likely caused the jury to accumulate speculated [contrib-

utory] negligence on the part of the plaintiff ... [and] eighty percent [contributory] negligent as a proximate cause was not justified and a fair and impartial trial was not had," does not clearly appear to be an unwise or manifest abuse of discretion.

" '[T]he trial court may set aside a verdict and grant a new trial whenever it appears to the trial court that the verdict is contrary to the law or evidence or that the verdict fails to render substantial justice. ...

. . . .

" '[T]he trial judge was in a position to see and hear the witnesses speak. He could observe their demeanor on the witness stand, and consequently was in a better position to judge their credibility and to weigh their testimony than is this court....' " *Dinneen v. Finch*, 100 Idaho 620, 625, 603 P.2d 575, 580 (1979), *quoting Rosenberg v. Toetly*, 93 Idaho 135, 138–139, 456 P.2d 779, 782–783 (1969).

Therefore, we affirm the trial court's grant of a new trial.

## II. *Animal Owner Liability*

Defendants have raised additional issues on appeal in the event that the grant of the new trial is affirmed. The trial court ruled and accordingly instructed the jury that defendants' conduct was a proximate cause of the accident and was negligence as a matter of law in view of the fact that defendants' horses were running at large on the highway at night. Therefore, the jury was foreclosed from considering whether defendants properly cared for and enclosed their horses and whether the horses were on the highway as a result of defendants' negligence or another cause beyond their control.

A nighttime collision between a domestic animal and a vehicle is not uncommon in Idaho. Our research finds six such cases authored by this Court dealing with rights and liabilities between the animal and vehicle owners. The first such case, *Shepard v. Smith*, 74 Idaho 459, 263 P.2d 985 (1953), analyzed the doctrine of *res ipsa loquitur*,

and then ruled that *res ipsa loquitur* "should be applied at least to the extent of requiring the owner of animals unattended upon a heavily traveled highway ... to satisfactorily explain their presence in order to avoid an otherwise justifiable inference of negligence." *Id.* at 464–465, 263 P.2d 985. In *Shepard*, the animal owner presented evidence attempting to show that he was diligently searching for the animals just prior to the accident. The Court apparently considered this evidence as an attempt to explain or rebut the inference of negligence. The Court stated:

"From such a state of facts the jury may have concluded the search was cursory and that in discontinuing further effort to find the animals or to keep them off the highway, and retiring for the night, under the circumstances, the owners were negligent. At least the question for the jury was presented." 74 Idaho at 465, 263 P.2d at 988.

The second animal-vehicle collision case, *O'Connor v. Black*, 80 Idaho 96, 326 P.2d 376 (1958), interpreted *Shepard* as follows:

"We interpret the announcements of the Shepard v. Smith case to be that the presence of livestock unattended upon a heavily traveled highway in the nighttime raises an inference of negligence on the part of the owner. In the absence of any satisfactory explanation by the owner of the presence of the animals thus on the highway at night unattended, a jury would be justified in finding that the presence of such animals on the highway was the result of negligence on the part of the owner.

"If a jury should find from the preponderance of the evidence that the animals were upon such highway at night unattended then the jury should further determine whether their presence on the highway has been satisfactorily explained by the owner; and from all the facts and circumstances in evidence, determine whether the owner was negligent, and if so, whether such negligence on his part was the proximate cause of the collision and damage which the mo-

torist sustained." 80 Idaho at 104, 326 P.2d at 380.

In the *O'Connor* opinion, the Court quoted with approval the *res ipsa loquitur* doctrine from *Shepard* and supported the doctrine with similar quotes from other jurisdictions. 80 Idaho at 101–102, 326 P.2d at 378–79. In both *Shepard* and *O'Connor* the inference of negligence and the alleged satisfactory explanation were issues of fact to be decided by the jury.

▉▉▉▉ Subsequent to these first two cases the legislature enacted statutes granting immunity from liability and negligence to the animal owner in accidents stemming from a domestic animal's collision with a vehicle if: (1) the animal is running on "open range," I.C. § 25–2118; or (2) if the animal is "lawfully" on any highway, I.C. § 25–2119. The term "lawfully" is not defined, but its definition is not at issue in cases of nighttime vehicle collisions with unattended domestic animals running at large wherein we can presume the animals' presence on the highway does not fall within any reasonable definition of "lawfully." The plaintiff vehicle owner in the present case argues that if the statutes grant immunity as a matter of law when the animal is in "open range" or is "lawfully" on the highway, then the statutes also impose liability as a matter of law when the animal is not in "open range" or "lawfully" on the highway. We disagree, since a grant of immunity in specific circumstances cannot be equated to an imposition of strict liability as a matter of law when those specific circumstances are not found. Further, nighttime vehicle-animal collision cases considered by this Court subsequent to the enactment of the statutes have never held the animal owner negligent as a matter of law. Rather, the most recent opinion of *Cunningham v. Bundy*, 100 Idaho 456, 600 P.2d 132 (1979), continued to cite with approval *Shepard* and *O'Connor*, the two original cases prior to the statutes, and their limited application of *res ipsa loquitur* which supplies an inference of negligence "unless satisfactorily explained by the [animal] owner." *Cunningham v. Bundy*, 100 Idaho at 458, 600 P.2d at 134.

The animal owner may rebut the inference by submitting evidence of the proper care, proper enclosures, fence conditions, fence inspections, diligent searches, etc. *See Cunningham v. Bundy, supra; Whitt v. Jarnagin*, 91 Idaho 181, 418 P.2d 278 (1966); *Corthell v. Pearson*, 88 Idaho 295, 399 P.2d 266 (1965); *Soran v. Schoessler*, 87 Idaho 425, 394 P.2d 160 (1964); *O'Connor v. Black*, 80 Idaho 96, 326 P.2d 376 (1958); *Shepard v. Smith*, 74 Idaho 459, 263 P.2d 985 (1953). *See also Maguire v. Yanke*, 99 Idaho 829, 590 P.2d 85 (1978) (crop damage by cattle at large); *Stanberry v. Gem County*, 90 Idaho 222, 409 P.2d 430 (1965) (owner not liable for negligence of bailee in possession of animal).

▉▉▉▉ To summarize the law: (1) the owners of domestic animals are not liable or negligent when the animals cause a highway collision in "open range" or when the animals are "lawfully on any highway," I.C. §§ 25–2118, –2119; (2) if the "open range" or "lawful" conditions are not present, then the doctrine of *res ipsa loquitur* supplies an inference that the animal owner was negligent; (3) the inference can be supplemented by other evidence of the owner's negligence; (4) the inference can be rebutted by a satisfactory explanation or showing by the animal owner of proper care, enclosures, and any other evidence tending to negate the inference of the owner's negligence; (5) when properly placed at issue by the parties, the issues of lawful presence, inference of negligence, and rebuttal of the inference, are questions for the trier of facts; and (6), in any event, the vehicle owner may be liable for contributory negligence under various theories.

▉▉▉▉ Applying these rules to the present case, we find no evidence to establish that the horses were in "open range" or "lawfully" on the highway. Hence, the animal owners were not entitled to immunity pursuant to I.C. §§ 25–2118, –2119. Without any other evidence, other than the facts that defendants owned the animals which were unattended on the highway at night, the doctrine of *res ipsa loquitur* supplies

an inference from which the jury could conclude that defendants were negligent and that negligence proximately caused the accident. The jury should also have been permitted to consider the evidence offered by defendants as to the proper care and enclosures of the horses, which evidence was offered in an attempt to rebut the inference of the negligence and proximate cause. Therefore, the trial court erred by taking that issue from the jury and ruling as a matter of law that the animal owners were negligent and proximately caused the accident.

### III. *Exceeding the Statutory Speed Limit*

The appellants raise the additional issue of whether or not exceeding the maximum speed limit contained in I.C. § 49–681 is negligence *per se*. An expert witness testified that plaintiff's estimated range of speed was from 65–90 m.p.h., most probably 70–75 m.p.h. The passenger in the pickup estimated the pickup's speed to be 65 m.p.h., and there was evidence that plaintiff had just passed the pickup when the collision occurred. Plaintiff herself estimated the speed of her vehicle at the time of the collision to be 60 m.p.h. Therefore, the evidence was uncontroverted that plaintiff was exceeding the posted and statutory speed limit of 55 m.p.h. at the time of the collision. The trial court nevertheless refused defendants' proposed jury instruction that exceeding the speed limit constituted negligence *per se*.

Prior to 1977, former I.C. § 49–701 contained Idaho's basic rule and maximum speed limits and specifically set out that the violation of the maximum speed limit was *prima facie* evidence that the speed was not reasonable or prudent. This was interpreted as creating a rebuttable *prima facie* case of negligence. *See Stanberry v. Gem County,* 90 Idaho 222, 409 P.2d 430 (1965); *State v. Trimming,* 89 Idaho 440, 406 P.2d 118 (1965); *Jones v. Talbot,* 87 Idaho 498, 394 P.2d 316 (1964).

In 1977, the motor vehicle statutes were recodified with the basic rule and maximum speed limits being contained in I.C. § 49–681, which statute now contains no indication as to the effect to be accorded a violation of the statute. The recodification included I.C. § 49–686(2) which provides that violation of the maximum speed limitations "shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident." This Court has not interpreted these two statutes as to the effect of a violation of the maximum speed limits since the recodification. The Idaho Court of Appeals has ruled that, "I.C. § 49–681 is a safety statute, enacted for the protection of motorists and other persons using Idaho's roads," and therefore the Court of Appeals applied a negligence *per se* standard to a violator, with the issue of causation to be submitted to the factfinder (assuming the causation issue was properly placed in issue by the parties). *See Johnson v. Emerson,* 103 Idaho 350, 352, 647 P.2d 806, 808 (Ct.App.1982). We are also aware of the well settled rule that the violation of other safety-related motorist statutes constitutes negligence *per se*. *Bradbury v. Voge,* 93 Idaho 360, 461 P.2d 255 (1969) (motorcyclist operating to the left of center line); *Bale v. Perryman,* 85 Idaho 435, 380 P.2d 501 (1963) (passing at an intersection). *See also Pittman v. Sather,* 68 Idaho 29, 188 P.2d 600 (1947) (negligence *per se* is the violation of a statutory duty); *Brixey v. Craig,* 49 Idaho 319, 288 P. 152 (1930) (violation of a positive statutory inhibition is negligence *per se*).

Plaintiff argues that I.C. § 49–686(2), which states:

"(2) The provision of this title declaring maximum speed limitations shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident,"

was intended by the legislature to abrogate the common law that violation of the maximum speed limit is negligence *per se*. This argument was accepted by the trial court

when refusing to instruct the jury that plaintiff's excessive speed constituted negligence. The trial court was of the opinion that the federally imposed 55 m.p.h. speed limit was merely an energy saving statute unrelated to safety. We are unpersuaded by the argument. In construing a statute with exactly the same wording as I.C. § 49–686(2), the New Mexico court stated:

"This section reads:

" 'The provision of this act declaring prima facie speed limitations shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident.'

"Mrs. Turner contends that under this statute, proof of violation of a posted speed is not negligence per se; rather, that a violation can be no more than evidence of negligence. We disagree.

"Section 64–18–7(B), supra, indicates that in cases concerned with posted speed limits plaintiff must still meet his traditional burden of proof. It says that a case involving posted speed limits is not a special category just because posted speed limits are involved. Even if posted speed limits are involved, plaintiff must still prove negligence as a proximate cause of the accident.

"Section 64–18–7(B), supra, however, does not state how negligence is to be proved. Proof of violation of a statute is one method of proving negligence. See Clay v. Texas-Arizona Motor Freight, Inc., 49 N.M. 157, 159 P.2d 317 (1945). Section 64–18–7(B), supra, does not provide that proof of violation of statutes concerning posted speed limits is not proof of negligence.

"Once it was proved that Mrs. Turner violated the posted speed limits she was negligent as a matter of law because proof of the violation was proof of negligence on her part. Section 64–18–7(B), supra, does not change that rule." *Dahl v. Turner*, 80 N.M. 564, 458 P.2d 816, 823 (App.1969), *cert. den.* 80 N.M. 608, 458 P.2d 860 (N.M.1969).

We are persuaded that the maximum speed contained in I.C. § 49–681 which states, "[N]o person shall drive a vehicle at a speed in excess of such maximum limits: . . . (b) Fifty-five (55) miles per hour in other locations [outside urban districts]," is a safety statute and the violation of this positive inhibition is negligence *per se*. *Johnson v. Emerson*, 103 Idaho 350, 647 P.2d 806 (Ct.App.1982). *Accord Dahl v. Turner, supra; Theonnes v. Hazen*, 37 Wash.App. 644, 681 P.2d 1284 (1984). We agree with the New Mexico court's interpretation of the statutory language contained in I.C. § 49–686(2), that a plaintiff in a civil action is not relieved from proving proximate cause even though the negligence found is a result of the violation of the maximum speed limits set out in I.C. § 49–681. In the present case the evidence was uncontroverted that plaintiff was exceeding the maximum speed limit of 55 m.p.h. Therefore, the trial court erred in refusing to instruct the jury that plaintiff's speed constituted negligence as a matter of law. Only the issue of whether such negligence proximately caused the accident should have been submitted to the jury.

The order of the trial court granting a new trial is affirmed, and the case is remanded for a new trial with legal instructions consistent with this opinion.

Affirmed in part, reversed in part, and remanded. No costs or attorney fees.

DONALDSON, C.J., and SHEPARD, BISTLINE and HUNTLEY, JJ., concur.

## ON REHEARING

A petition for rehearing in this matter was granted and the cause reargued. The Court has reviewed the record and considered the arguments presented by counsel, and continues to adhere to the views expressed and the conclusion reached in the earlier opinion.

DONALDSON, C.J., and SHEPARD, BAKES and HUNTLEY, JJ., concur.

**242**

BISTLINE, Justice dissenting.

## I.

The majority states in the course of its opinion the following:

> To summarize the law: (1) the owners of domestic animals are not liable or negligent when the animals cause a highway collision in "open range" or when the animals are "lawfully on any highway," I.C. §§ 25–2118, –2119; (2) if the "open range" or "lawful" conditions are not present, then the doctrine of *res ipsa loquitur* supplies an inference that the animal owner was negligent; (3) the inference can be supplemented by other evidence of the owner's negligence; (4) *the inference can be rebutted by a satisfactory explanation or showing by the animal owner of proper care, enclosures, and any other evidence tending to negate the inference of the owner's negligence;* (5) when properly placed at issue by the parties, the issues of lawful presence, inference of negligence, and rebuttal of the inference, are questions for the trier of facts; and (6) in any event, the vehicle owner may be liable for contributory negligence under various theories. Maj.op., p. 909 (emphasis added).

My review of Idaho law on this point brings me to the conclusion that item no. 4 is an incorrect statement of the law.

Once it is found that an animal is upon a roadway that is not in an open range area, it is *presumed* that it is not lawfully there, and it is *inferred* that the animal is there as a result of the owner's negligence. *Cunningham v. Bundy*, 100 Idaho 456, 458–59, 600 P.2d 132, 134–35 (1979); *Corthell v. Pearson*, 88 Idaho 295, 298–300, 399 P.2d 266, 268–71 (1965). The owner is then allowed the opportunity to rebut the *presumption* that the animal is on the road unlawfully by satisfactorily explaining its presence. *Whitt v. Jarnagin*, 91 Idaho 181, 187, 418 P.2d 278, 284 (1966). Not until today has Idaho also allowed an owner the opportunity to rebut the *inference* of

negligence. This distinction is critical for the following reasons.

Under the now "old" rule—allowing an owner to contest the presumption that an animal was on the road unlawfully—only actions independent of any beyond the owner's control could avoid liability. For example, evidence that an earthquake or landslide knocked down the owner's fence would satisfactorily explain the animal's presence on the road. Under the "new" rule, an owner can rebut inferred negligence by such a self-serving statement as, "I inspected the fences regularly and discovered nothing amiss; I simply have no idea how the animals got out." Now, to rebut any inferred negligence, the majority declares that the owner need not produce any evidence of independent conduct beyond the owner's control which was responsible for the animals' presence upon a public highway. This burden shift places livestock owners in a more advantageous position with respect to liability for their at-large livestock than ever before. This does not comport with Idaho law as it has existed, and is not in accordance with legislatively declared policy.

Idaho law has carefully made and followed the distinction to which reference has been made. In *O'Connor v. Black*, 80 Idaho 96, 104, 326 P.2d 376, 380 (1958), this Court stated:

> Lastly appellant assigns error of the trial court in refusing appellant's requested Instruction No. 1, reading:
>
> > "You are further instructed that the presence of livestock upon a highway at night unattended raises a presumption of negligence on the part of the owner, and that such owner, in order to avoid being found negligent in allowing such livestock upon the highway *must excuse himself by showing circumstances under which the livestock got upon the highway and that such circumstances were not due to negligence on the part of the owner.*"
>
> Appellant asserts that the requested instruction is consistent with the law announced in *Shepard v. Smith*, supra, (74

Idaho 459, 263 P.2d 985 (1953) ]. With such assertion we are not in entire accord.

We interpret the announcements of the *Shepard v. Smith* case to be that the presence of livestock unattended upon a heavily traveled highway in the nighttime raises an inference of negligence on the part of the owner. *In the absence of any satisfactory explanation by the owner of the presence of the animals thus on the highway at night unattended, a jury would be justified in finding that the presence of such animals on the highway was the result of negligence on the part of the owner.* (Emphasis added.)

In *Corthell, supra,* 88 Idaho at 298–300, 399 P.2d at 268–71 the Court stated:

Appellant's land was fenced, and was located in a herd district. *The burden rested upon appellant under the provisions of the aforesaid sections of the statute to show that his domestic animal was lawfully on the highway;* otherwise, under I.C. § 25–2119, the implied duty rested upon appellant to keep his animal off the highway, since the land was in a herd district and not on "open range". See *Shepard v. Smith,* 74 Idaho 459, 263 P.2d 985 (1953), and *O'Connor v. Black,* 80 Idaho 96, 326 P.2d 376 (1958), wherein was applied the doctrine of res ipsa loquitur as to animals on the highway during the nighttime.

. . . .

. . . Under the law heretofore cited, *appellant had the burden of proving that the animal was lawfully on the highway,* which was within a herd district and not on "open range". *The animal's presence on the highway was ipso facto unlawful* which, in the absence of proof to show that its presence thereon was lawful, cannot absolve appellant from liability for damages. . . .

. . . .

The law itself supplies the presumption that the animal was unlawfully on the highway at the time and place of the collision unless satisfactorily explained by the owner. *Whether appellant did or did not satisfactorily explain the animal's presence upon the highway as being lawful* at the time and place of the collision, in the light of the evidence, was for the trier of the facts; and the trier of the facts resolved that issue in favor of respondent and against appellant. (Emphasis added.)

In *Cunningham, supra,* 100 Idaho at 458, 600 P.2d at 134, this Court rejected the defendant's argument that she was not negligent and pointed to the fact that she had not provided any substantial evidence to rebutt the presumption that her horse was illegally on the road.

In this case, too, the district court held that the defendants had not presented any substantial and competent evidence to rebut the presumption that their horses were unlawfully on the road. The evidence in this case shows that there was no dispute as to the place or manner in which the horses exited the enclosure. Although the defendants presented a good deal of testimony concerning the general reliability of their fences, they admitted that the horses escaped through a gate which had fallen down, falling away from the enclosure, and that the horses exited over the fallen gate.[1] The gate was constructed of pine poles,

---

1. Defendant William Schmidt testified as follows:

Q. What evidence did you find to show how the horses got out?

[MR. SCHMIDT] A: The gate was knocked over and I seen the horse tracks going through the gate.

. . . .

Q. Now, when you saw the gate after the horses got out, you say it was down. Will you describe to us the manner in which it was down?

A. It was just tipped over into our yard.

Q. Was any part of it remaining suspended?

A. I can't remember that.

Q. You say you saw horse tracks?

A. Yes.

Q. *And that's the only evidence you have as to how the horses got out?*

A. *Yes.* Tr., pp. 56–58 (emphasis added).

with the hardware for hinging consisting of an "L" bolt screwed into the fence's anchor pole and an eye bolt screwed into the gate pole with the eye bolt fitting onto the post of the "L." The "L" bolt merely screwed into the pole and had no template or other apparatus to keep it tight or keep it from turning once it was in place. For some reason, both unexplained and unexplainable by the defendants, the "L" bolt turned, allowing the eye to slide off the post of the "L" and causing the gate to fall. There is no evidence as to how long it took the "L" bolts to turn, although the defendants admitted that they had not made any specific inspection of the hinging mechanism immediately prior to the horses' escape.

A witness *for the defendants* testified that he felt it would be good practice, if such a hinge mechanism were used, that there be a device to anchor the "L" bolt so that it could not turn once in place. He also testified that he had used such hardware on his own fence.

There was absolutely no evidence that the gate was exposed to any extraordinary force nor was any damage done to the gate in the escape of the horses. All appearances are that it merely fell over, allowing the horses to escape.

This is clearly a circumstance where the gate was under the control and management of the defendants, and the circumstances are such that an accident would not normally occur without some negligence. Gates should not simply fall over. *Defendants were unable to present any evidence at trial that satisfactorily explained the presence of their animals on the roadway nor were they able to explain why or what caused the "L" bolts on the gate post to turn, allowing the gate to fall.* They made no attempt to demonstrate that anything extraordinary would have caused the horses to force the gate or that they had made regular inspections of the hinge apparatus to insure that it was in continuing good condition. In reviewing this evidence, the district court stated:

All right. Well, the Court has taken the view on the record that *there's no substantial evidence of any force, cause, what have you, outside of the confining facility itself and the animals* themselves and legal analysis, we like to believe to point to concepts that are applicable to the proposition of the Defendants. The Court talks in terms of duty to keep the animals confined and of negligence and the failure to do so and the Court sometimes talks in terms of an inference from the failure to do so of negligence and of a burden on behalf of the Defendants to either go forward to show circumstances that rebut such an inference or sometimes it's been talked of going forward to show that animals were lawfully on the highway.

I am having some difficulties rectifying the things that Supreme Court has said into some specific category that historically I should be able to clearly understand. I agree with the proposition the use of the word "lawfully" on the highway or their inference resulting from their being unlawfully on the highway as those terms "lawfully" or "unlawfully" then relate to the concept they have to be negligent.

A little different vein when I think about someone having to prove that they were lawfully on the highway and what comes to my mind is that they're being driven, led, herded. So we have a little different—at least I do, when I get—I don't know, the concept of those things that are rightfully leading in terms of lawfully and necessarily or unlawfully and necessary.

I think I do clearly understand that if they have escaped a confinement and in any breach of the duty to keep them confined, we can then say they're not lawfully on the highway. I can conceive the nature of the duty as announced by the Court and is derived from duties to be a special duty. I don't know whether you call it a heightened duty, but a special duty, a specific duty to keep them confined. And I believe that encompasses the proposition that you are charged with the propensity of your animals to want to escape confinement. We have a specific gate, its characteristics are in the

record and the fact that it was flat on the ground and the tracks of the horses lead therefrom, *there's no evidence of any other tracks caused other than the sheer activity of the horses themselves.* And under those circumstances, I believe that it is a summary of law, the record shows that the breach of duty occurred. If we're talking about negligence then negligence is shown or in any event *by law there's a presumption of negligence that has not been rebutted in the evidence or being substantial evidence of any kind of an agency or anything else outside of the facility and the animals themselves.* Tr., Vol. 2, pp. 487–89 (emphasis added).

I fail to discern how the majority is able to conclude that the district court erred in refusing to submit this question to the jury. Upon the evidence of this case it can in no way be stated that the district court erred. *Stephens v. Stearns,* 106 Idaho 249, 252–53, 678 P.2d 41, 44–45 (1984). I suggest only that the majority may be guilty of not closely reading the record. Furthermore, I am now fully convinced that prior case law more accurately ascertained and applied the legislature's intent and principles of common law.

## II.

The majority's holding that violation of a speed limit is negligence *per se* is directly in contravention to established Idaho law. The majority concedes that prior to 1977, former I.C. § 49–701 "contained Idaho's basic rule and maximum speed limits and specifically set out that the violation of the maximum speed limit was *prima facie* evidence that the speed was not reasonable or prudent. This was interpreted as creating a *rebuttable prima facie* case of negligence." Maj.op., p. 910. The majority then

acknowledges three cases directly on point and which held sway until 1977. *See Stanberry v. Gem County,* 90 Idaho 222, 409 P.2d 430 (1965); *State v. Trimming,* 89 Idaho 440, 406 P.2d 118 (1965); *Jones v. Talbot,* 87 Idaho 498, 394 P.2d 316 (1964).

What mystical event, then, occurred in 1977 which required this Court to interpret I.C. § 49–681 as now mandating that violation of a posted speed limit is elevated to negligence *per se*? The answer is not readily discernible. All that happened in 1977 was that I.C. § 49–681 was recodified; the language regarding the effect of a speed violation was wholly omitted. Subsection (2) of § 49–681 was added. It states that violation of a speed limit "shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident." To my mind, the legislature's action in 1977 establishes *a fortiori* that violation of a speed limit *shall not constitute negligence per se.*

The majority erects a straw man and then attacks it when it goes so far as to say that the district court erred in holding that the federally imposed 55 m.p.h. speed limit was merely an energy saving statute. That is not the issue which needs deciding. Rather, the underlying issue here is to consider the reasons why the 1977 legislature enacted I.C. §§ 49–681 and 49–686. It is well-known that the 55 m.p.h. speed limit was established in order to guarantee Idaho's continued receipt of federal transportation funds. This is borne out by I.C. § 49–681(3) [2] which states that a driver exceeding 55 m.p.h. shall be fined a mere $5.00. Furthermore, the same section states that such a fine shall not be deemed a moving violation (true legal fiction) for the purpose of establishing rates of motor

---

**2.** (3) Penalty.—When the maximum speed on a given highway is set at fifty-five (55) miles per hour and the maximum posted speed was more than fifty-five (55) miles per hour prior to the emergency declared by P.L. 93–239, or when the maximum speed on a portion of the interstate highway system is fifty-five (55) miles per hour and the speed of the vehicle was seventy (70) miles per hour or less, the maximum fine that shall be imposed for exceeding fifty-five (55)

miles per hour, but not exceeding the posted limits prior to the emergency, shall be five dollars ($5.00). In addition, no jail sentence shall be imposed on such a conviction, nor shall a conviction result in violation point counts as prescribed in section 49–330, Idaho Code. A conviction under this paragraph shall not be deemed to be a moving traffic violation for the purpose of establishing rates of motor vehicle insurance charged by a casualty insurer.

vehicle insurance charged by an insurer. Had the legislature sincerely intended I.C. § 49–681 to be a safety statute, would it treat the consequences of breaking that statute so lightly? Most people of reason would think not.

The majority implicitly acknowledges the difficulty of its position by relying heavily upon a New Mexico Court of Appeals case decided 17 long years ago, *Dahl v. Turner*, 80 N.M. 564, 458 P.2d 816, 823 (N.M.App. 1969), *cert. denied*, 80 N.M. 608, 458 P.2d 860 (1969). This was before the day of the first petroleum shortage crisis. The majority out of necessity falls back on tha case as a route to take more expediently than attempting to discuss or definitively distinguish *Stanberry, supra, Trimming, supra*, or *Talbot, supra*, all of which run opposite to today's majority opinion.

It is to be noted that the majority does acknowledge that, under its comprehension of what the law should be, there remains the issue of whether plaintiff's speeding violation proximately caused the accident. A close look at the evidence at the first trial suggests that it is entirely possible that the district court, upon an independent, complete and careful review of the record, may again hold that the negligence of the plaintiff, as a matter of law, did not proximately cause the accident nor her injuries.

Such a finding would be harmonious with a case relied upon by the majority, *Theonnes v. Hazen*, 37 Wash.App. 644, 681 P.2d 1284 (1984). The district court there had granted a summary judgment for a defendant who was alleged to have struck a child who had ridden his bicycle out of a driveway and onto the street. An expert had calculated that the defendant was traveling at 42 m.p.h. at the time of collision in a 35 m.p.h. zone. The evidence also suggested that had the defendant been proceeding within the maximum speed limit, she still would not have been able to respond to the situation she encountered in time to have avoided collision with the child. *Theonnes, supra*, 681 P.2d at 1285. Evidence in the case revealed that even had the driver been proceeding at the maximum posted speed limit, she would have had no more than one-quarter second additional time to appraise the situation and react. The court reasoned:

> Reasonable minds cannot differ. The collision would have happened even if the car was traveling at the 35 m.p.h. speed limit. It would be sheer speculation that anything could have been done by the driver in that *p1/4%p second to avoid the collision. Since the collision would have occurred even at the legal speed, the evidence of 42 m.p.h. speed could not be proximate cause....*
>
> It would be speculation that the driver could have avoided the child during the period of slightly over 1⅛ seconds from the time she first saw him or during the period of sightly over .38 seconds after the brakes first engaged. The collision would have occurred at the legal speed, even accepting appellant's evidence of 59 feet between the first sighting and impact. Appellant's evidence would not support a finding that there was any negligent act of the driver which was a proximate cause of the collision. *Id.* at 1286.

*See also Kilde v. Sorwak*, 1 Wash.App. 742, 463 P.2d 265 (1970) (4 seconds); *Clark v. King*, 178 Wash. 421, 34 P.2d 1105 (1934) (4.16 seconds).

The plaintiff in this case had the right-of-way on the highway on the night in question. That right-of-way was interfered with and violated by the illegal presence of the defendants' horses on the roadway. Nevertheless, defendants would have the jury speculate with the type of "maze of details arising from split-second computation of time and distance," which the Washington courts have rejected as a matter of law in circumstances such as here. It seems clear, therefore, that the trial court has full authority to deal with the issue of proximate causation, upon retrial, in any manner allowed under the Idaho Rules of Civil Procedure, and that it need not necessarily present the issue of proximate causation to the jury—although the majority opinion seemingly dictates that it would do so were it only a trial court.

A counterclaim was filed against the plaintiff for the value of defendants' horses

destroyed. It seems that the defendant continues to see the Idaho maximum speed limit statute as cloaking the plaintiff with the mantle of negligence *per se* and the proximate cause of the loss of those animals. However, even from the language of the majority opinion, the purpose of I.C. § 49–681 is safety related, as related to the safety of those *persons* who are using the highways, not for the protection of horses unlawfully at large on highways.

In order for a violation of statute to be pertinent in a particular case, the statute must be applicable; that is, the statute must be designed to protect the class of person from the type of harm inflicted as a result of the statutory violation. *See Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983); *Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234 (1973).