718 P.2d 1178

**Steven O. WISE, Plaintiff-counter-defendant-appellant-cross respondent,**

v.

**FIBERGLASS SYSTEMS, INC., an Idaho corporation; Gary B. Multanen, an individual; and Christopher Walker, an individual, Defendants-counterclaimants-respondents-cross appellants.**

**No. 15618.**

Supreme Court of Idaho.

April 10, 1986.

Robert M. Tyler, Jr., and Bobbi K. Dominick, of Elam, Burke & Boyd, Boise, for plaintiff-counterdefendant-appellant-cross respondent.

Rudolf D. Barchas, Boise, for defendants - counterclaimants - respondents -cross appellants.

BAKES, Justice.

Steven Wise, plaintiff appellant, appeals from the district court's denial of his motion for a new trial. Wise's motion for a new trial followed a jury verdict finding Wise 45% responsible for an automobile accident in which Wise sustained injuries. We affirm the district court's decision.

On December 15, 1981, at approximately 3:30 p.m., Steven Wise's 1977 Toyota Corolla station wagon collided with the right rear corner of a trailer being pulled by a truck owned by Fiberglass Systems, Inc., and driven by Christopher Walker. At the time of the collision, both vehicles were traveling eastbound on Interstate 84 near the Cloverdale Road overpass.

The truck/trailer driven by Walker was traveling slowly in the left lane of the interstate when Wise's vehicle struck the trailer from the rear. After the accident, Walker told the Idaho State Police that, while he was traveling in the opposite westbound direction, a tub and shower stall had fallen from the trailer, and that he had used a crossover to turn around to retrieve the tub and shower stall. At the time of the accident, Walker had located the missing tub and shower stall and was traveling slowly in the extreme left hand lane. He was about to use another crossover to turn around into the westbound lane and pick up the tub and shower stall. The crossover which Walker was preparing to use at the time of the accident was not a legal crossover.

Plaintiff Wise, on the other hand, acknowledged that he was traveling in excess of 55 m.p.h. and was probably traveling at 60 m.p.h. just prior to the accident. He based these speed estimates on his usual driving habits, since he remembered nothing about the accident itself. Other evidence admitted at trial indicated that Wise might have been traveling as fast as 70 m.p.h.

As a result of the collision, Wise was injured and his vehicle was damaged. Alana Wise, plaintiff's wife, who was traveling in the vehicle at the time of the collision and who was also injured, ultimately settled with the defendants in a separate action for approximately $167,000.

Wise subsequently filed this negligence suit, naming Walker and Fiberglass Systems, Inc., as defendants. Defendants answered and filed a counterclaim alleging negligence on the part of Wise and seeking contribution for amounts paid to Alana Wise.

Prior to trial, the defendants filed motions *in limine* seeking, *inter alia,* to prohibit mention at trial of the settlement reached with Alana Wise. The motion to prohibit mention of the settlement was granted. Plaintiffs also filed a motion *in limine* seeking to prevent mention of evidence as to Wise's failure to use a seat belt. This motion was also granted.

Trial began on February 6, 1984. At trial, Fiberglass Systems admitted full responsibility for any negligence attributable to Walker, under the doctrine of *respondeat superior,* and so stipulated. Throughout the trial, the plaintiffs attempted to put forth proof that Fiberglass Systems was independently responsible for the accident due to negligent hiring and training of Walker and negligent entrustment of the truck to Walker. After much consideration the district court refused plaintiffs' independent negligence claims against Fiberglass Systems, Inc., because of the admission by Fiberglass of responsibility for Walker's negligence.

The jury subsequently returned a verdict finding Walker 55% negligent and Wise 45% negligent. The total damages sustained by Wise were determined to be $43,-750. Thus, Walker and Fiberglass Systems, Inc., were found jointly and severally liable to Wise for 55% of the damages, or $24,062.50, with the defendants collectively entitled to contribution on their counterclaim from Steven Wise for 45% of the $167,000 settlement which Alana Wise received. Plaintiffs' motion for a new trial

and additur were denied, and this appeal followed.

In this appeal Wise argues that the district court erred in refusing to let him present evidence on his theories as to Fiberglass Systems' independent negligence. The question of the propriety of allowing a plaintiff to proceed against a vehicle owner under the independent negligence theories of negligent entrustment and negligent hiring and training, once the owner has admitted liability under the doctrine of *respondeat superior* for the employee's negligence, when no punitive damages are sought, is one of first impression in Idaho. This issue was extensively argued and briefed before the district court and has been extensively argued and briefed before this Court. Our review of the record and the authorities cited by both parties directs us to conclude, as it did the district court, that it was not error to refuse to allow Wise to pursue his independent negligence theory once Fiberglass Systems admitted liability under the doctrine of *respondeat superior.*

Those jurisdictions which have considered this issue in factual circumstances similar to this case have almost without exception determined that if the owner has already admitted liability under the doctrine of *respondeat superior*, it is improper to also allow a plaintiff to proceed against the owner of a vehicle on the independent negligence theories of negligent entrustment and negligent hiring or training. *See Elrod v. G & R Construction Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982); *Clooney v. Geeting*, 352 So.2d 1216, 1220 (Fla.App.1977); *Willis v. Hill*, 116 Ga.App. 848, 159 S.E.2d 145 (1967) *rev'd on other grounds* 224 Ga. 263, 161 S.E.2d 281 (1968); *Houlihan v. McCall*, 78 A.2d 661, 665, 197 Md. 130 (1951). *See also* 30 A.L.R. 4th 838 (1984); 7A Am.Jur.2d Automobiles & Highway Traffic, § 693 (1980).[1] The reason for the rule prohibiting the plaintiff from presenting proof on independent negligence

issues under these factual circumstances was ably articulated by the Georgia Court of Appeals.

"It must be remembered that there is more than one way to impose liability upon A for B's conduct. Possibilities for doing so, recognized in varying degrees in various jurisdictions, are agency, negligent entrustment of a chattel to an incompetent, conspiracy, the family-purpose doctrine, joint enterprise, and ownership liability statutes. Assuming that all these theories for attaching liability to A for B's wrongdoing were recognized in this jurisdiction and that all six grounds were properly pleaded in one case for one injury, would the plaintiff be entitled as 'the master of his own lawsuit,' to introduce evidence to prove a liability link or 'breach of duty' under each and every ground, notwithstanding the fact that A does not contest his liability for B's conduct? Under a contrary holding, if A has breached six 'duties' to the plaintiff, the plaintiff may take all the trial time necessary, with corresponding space in the record, to prove liability under all six theories, regardless of the fact that A admits directly the ultimate thing sought so laboriously to be established in the first instance—that he is legally responsible in any event for B's conduct. The fallacy of the situation is not relieved by declaring that A, the employer-entrustor in this case, has breached two, or six, or a hundred 'duties' to the plaintiff. In cases where A is sought to be held for an injury caused by B, the employee-driver in this case, the 'breach of duty' by A is nothing more than a theory under which responsibility for B's conduct is tacked onto A. The result is the same whether A's 'duty' be called primary or vicarious. If, then, the only purpose and relevance of evidence showing the employee's incompetence and the employer's knowledge thereof is to show a liability link from the employee to the employer, and

---

1. Our research provides us with a single case holding to the contrary. That case, *Perin v. Peuler*, 373 Mich. 531, 130 N.W.2d 4 (1964), has been referred to as contrary to the weight of

authority. *See* 30 A.L.R. 4th 838; *Willis v. Hill*, 159 S.E.2d at 155. Here, we note only that we find the dissenting opinions in this unusual case to be most persuasive.

this link is admitted to exist, the evidence should be excluded under the general rule regarding undisputed matters, leaving as the only question the one contested issue—whether the employee's negligence caused the injury." *Willis v. Hill, supra* at 158 (footnote omitted).

We agree with the district court that the overwhelming weight of authority follows the reasoning expressed by the Georgia court, and that that reasoning is persuasive. Under the factual circumstances presented to us here, plaintiffs offered evidence which could only have served to establish that Fiberglass Systems was responsible for putting Walker behind the wheel of the truck/trailer with which Wise ultimately collided. Since, under the doctrine of *respondeat superior,* Fiberglass Systems admitted responsibility for putting Walker behind the wheel and for Walker's negligence, the offered evidence would only have served to deflect the jury's attention from the one contested issue—whether the collision was caused by Walker's negligence.

It should be emphasized that, after a full review of the record, we do not see this as a case where the independent acts of the employer might impose additional liability on the employer. As the Florida Court of Appeals stated in *Clooney v. Geeting,* 352 So.2d 1216 (Fla.Dist.Ct.App.1977):

"We recognize that factual situations could arise where one of the [independent negligence] theories would impose additional liability. ... [An] example might be where an owner or authorized custodian of a motor vehicle who knows that the vehicle has defective brakes allows one who is not aware of this dangerous condition to use it, and because of the bad brakes an accident occurs. If the driver were found not to be negligent, the owner could not be held vicariously liable. So the means of imposing liability on the owner would be through his own negligence of lending the car with bad brakes, *i.e.,* negligent entrustment." 352 So.2d at 1220.

Here, however, Wise has only alleged that Fiberglass negligently hired and trained Walker, and then negligently entrusted Walker with the vehicle. There are no allegations, nor was any proof offered at trial, that Fiberglass provided Walker with defective equipment and thereby was independently responsible for the accident. If such allegations or offers of proof had been made, our decision today might be different.

Nor are we persuaded by Wise's citation to *Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234 (1973). As appellant has admitted, both at trial and in the briefs submitted to this Court, the *Kinney* decision does not directly address the issue presented here. *Kinney* was concerned with interpreting I.C. § 49–1404, a statute setting a limitation on the liability of a motor vehicle owner for imputed negligence, not with a case where the employer has acknowledged liability under the doctrine of *respondeat superior.*

■ Wise's second allegation of error is that the district court erred in instructing the jury on negligence *per se,* based on evidence that Wise was traveling in excess of 55 m.p.h. In *Griffith v. Schmidt,* 110 Idaho 235, 715 P.2d 905 (1985), we stated:

"We are persuaded that ... I.C. § 49–681 which states, '[N]o person shall drive a vehicle at a speed in excess of such maximum limits: ... (b) Fifty-five (55) miles per hour in other locations [outside urban districts],' is a safety statute and the violation of this positive inhibition is negligence *per se.*" 110 Idaho at 241, 715 P.2d at 911.

Accordingly, the jury was properly instructed that a violation of I.C. § 49–681 constitutes negligence *per se.*

■ Wise also argues that the district court abused its discretion in denying his motions for a new trial based (1) on insufficiency of the evidence to support the jury verdict, (2) on the inadequacy of the damages awarded, and (3) on irregularities in the proceeding. We find no merit in any of these contentions. While I.R.C.P. 59(a)

provides that a new trial *may* be granted for any of these reasons, the trial court's determinations not to grant a new trial will not be overturned absent a manifest abuse of discretion. *Stout v. Westover*, 106 Idaho 533, 681 P.2d 1008, 1009 (1984). We find no such abuse of discretion here.

■ Our complete review of the record indicates that Wise was driving in excess of the speed limit when his vehicle struck the rear of a trailer which other vehicles immediately preceding him had swerved to avoid. Although Wise testified that he remembered nothing about the accident itself, he acknowledged that he had been pacing these other vehicles just prior to the accident. From Wise's own testimony, particularly when coupled with eyewitness testimony and the testimony of accident reconstruction experts, the jury might well have concluded that the accident was caused, in substantial part, by Wise's excess speed and inattentive driving. Based on this record, we cannot reverse the trial court or overturn the jury's verdict.

■ Nor are we persuaded that the damages awarded were so inadequate as to mandate a new trial. *See Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979). In ruling on this issue, the district court stated:

"On the issue of damages, I conceded several things, that part of what I found really persuasive was the initial reports about the injury to the knee, the fact that there was no bruising, there wasn't any scratches, there wasn't any pain; that the pain came later; that there is no pain in the first three weeks.

"I mean, there is conflicting medical evidence. There was evidence of two serious knee injuries prior to the accident, but I really felt that looking at this evidence and looking at the reports of what people actually observed at the time of the accident, and what the Plaintiff himself reported about his symptoms, in light of Dr. Coughlin's testimony in the x-rays, I think, there was ample support for the view that the knee injury was not caused by the accident. It is my feeling in looking at this that we have a person with a bad knee, and at a time close to the—not terribly close, but close to the accident, that he had a knee problem. I really cannot say that it was caused by the accident.

"I just don't think that the evidence showed that.

"Now, on the issue of damages, I also took into effect that the hospitalization was relatively short. The actual damages were in comparison with the award, were lower; that the Plaintiff ... hasn't been greatly interfered with by his neck injury.

"I also noted at the trial that the plastic surgery was very successful. That scar is just not that noticeable. It—an excellent job was done, and I think he deserved an award for pain and suffering.

"He went through a lot of agony in the hospital, and it took him a lot to overcome. I figured up the damages, and when I figured up the damages at the time of trial, which I did in a somewhat rough fashion, and when I looked at it later, *there is not really a significant disparity between what the jury did and what I would do if the case were submitted to me without a jury.*

"I have tried 35 cases in this last year, and I have had several cases involving similar injuries. In addition to coming to my own conclusion on this, I discussed the damage amount with other Judges, and I just don't think it is out of line with the damage—that the damage award is out of line. I think it is well within the range of reason, and that a very careful review of the record supports the Jury's decision." (Emphasis added.)

Thus, pursuant to the standards articulated in *Dinneen*, the district court examined the jury's verdict as a thirteenth juror before ruling that the damages were adequate and that the motion for a new trial should be denied. Accordingly, the trial court did not err in denying the motion for new trial because of an inadequate award.

■ Lastly, we affirm the trial court's denial of a new trial based on irregularity

in the proceedings. While it is clear that a question asked of Steven Wise by defense counsel, which suggested that Alana Wise might have a large sum of money available to her, was improper and in violation of the court's order *in limine* preventing mention of Alana Wise's settlement, we agree with the district court that the question did not substantially prejudice the plaintiffs' case. The question was immediately objected to by plaintiffs' counsel and the objection was sustained. The district court stated:

"Now, as far as the improper remarks that Defense Counsel made, I admonished him after the Jury left, and I thought he was—when I thought he was about to go too far. He had only begun when I stopped him. I do not think that he actually did go too far. I heard the question, and I watched the Jury, and considering just the whole framework of events, I really don't think that that—that the question he actually asked placed anything improper before the Jury.

"I just don't think it had any effect on the Jury. What I was concerned about, the reason I jumped quickly, was I didn't want the question after that to be asked, and I was concerned that we were starting on a longer list of questions that would be improper, and so that was why I sustained the objection at that point.

"We took the noon recess, and I admonished Counsel not to go farther, but I don't think it went too far in what he did say. I don't think, frankly, that it would have made—I think it probably didn't make much sense to the Jury, because he didn't go on very long."

Further, any prejudice which might have resulted from the asking of a single question on the fifth day of a nine-day trial, objection to which was sustained, was cured by the court's extensive instruction to the jury as to the proper bases for a determination of Wise's damages. Accordingly, we affirm the ruling of the district court in denying the motion for new trial.

Affirmed. Costs to respondent.

DONALDSON, C.J., and McFADDEN, J. pro tem., concur.

SHEPARD, J., concurs in result.

BISTLINE, Justice, dissenting.

A plaintiff in this circumstance—injured in an auto accident allegedly as a result of poor driving tactics on the part of another driver, for whom a third party (the other driver's employer) is alleged to be liable—has always possessed a right to pursue the third party under theories of negligence separate and independent from the vicarious liability created on the theory of *respondeat superior*. Further, as discussed in my dissent in *Griffith v. Schmidt*, 110 Idaho 235, 242, 715 P.2d 905, 912 (1985),—a discussion which need not be repeated—I disagree that violation of the 55 m.p.h. speed limit constitutes negligence *per se*. Accordingly, I must respectfully dissent from the majority's opinion.

While *Kinney v. Smith*, 95 Idaho 328, 508 P.2d 1234 (1973), is not directly on point with the question here presented, it established a sound rule regarding multiple negligence theories offered against a party vicariously liable for injuries suffered in a collision of motor vehicles. That rule is sufficiently broad to be here controlling. In *Kinney*, the plaintiffs sued the driver and the owner of a vehicle which caused the plaintiffs' injuries. *Id.* at 328–29, 508 P.2d at 1234–35. The plaintiffs asserted liability against the owner under separate theories of (1) *"direct negligence* for furnishing a vehicle to an incompetent driver," and (2) "negligence which must be *imputed* to her *as owner* under I.C. § 49–1404, subd. 1." *Id.* at 329, 508 P.2d at 1235 (emphasis original). The trial court refused to admit evidence as to the former theory. On appeal (the circumstances of which are not essential), this Court unanimously held that the plaintiffs were entitled to present evidence relating to their allegation that the owner had negligently permitted an unlicensed driver to operate her car in violation of I.C. § 49–339, *in addition to* presenting evidence relating to

their theory of statutorily imputed negligence. *Id.* at 330–34, 508 P.2d at 1236–40. The *Kinney* plaintiffs' theory in essence was no different from the theory of negligent entrustment there pleaded. Consequently, under the rule of *Kinney,* the instant plaintiff should have had the opportunity to present theories of both negligent entrustment and *respondeat superior. Accord, Perin v. Peuler,* 373 Mich. 531, 130 N.W.2d 4 (1964); *Clark v. Stewart,* 126 Ohio St. 263, 185 N.E. 71 (1933).

Good reasons exist for allowing the plaintiff to pursue both theories. The factual circumstances of the instant case involve different negligent acts, the driver's negligence in operating the vehicle, and the negligence of Fiberglass in putting an inexperienced driver at the wheel of a truck which will travel on an interstate freeway. A plaintiff is entitled to present to the jury his proof on both theories. Until today I was unaware that there were good legal minds who opined otherwise. The negligent entrustment of a motor vehicle can result in injury to another. As with any other theory, both negligence and causation must be established. Under the law of comparative negligence, the jury is required to assign percentages of fault, and it is not inconceivable that causative fault may be attributed to the act of entrusting a motor vehicle to a driver who may be found to have been insufficiently trained and instructed.

Conversely, there is no persuasive reason for precluding a plaintiff from presenting multiple theories of liability. The majority's only justification is that "the offered evidence [on negligent entrustment] would only have served to deflect the jury's attention from the one contested issue—whether the collision was caused by Walker's negligence." Walker, however, may not have been as negligent in his driving as his employer was in putting him at the wheel— both being clearly jury questions. In any event, the jury *should* be allowed to consider the independent negligence of the employer. If, as the majority pontifically worries, this theory distracts from the other claim that the employee-driver was negli-

gent, that is a concern of the plaintiff alone.

The majority points to case law from other jurisdictions. However, there is a critical distinction between that case law and this case. In those cases, the courts were concerned with the introduction of *prior acts of negligence by the driver* as evidence of the owner's negligent entrustment. The Annotation explains:

In order to establish liability under the theory of negligent entrustment, the incompetence of the driver must be established, and further, the plaintiff must prove that the owner had knowledge of the driver's incompetence. It has been held that proof of incompetency, and the owner's knowledge thereof, may be established by evidence of specific instances of carelessness, recklessness, or prior acts of negligence. The rule permitting evidence of other negligent or reckless acts in entrustment cases is at variance with the general rule that evidence of similar prior acts of negligence is inadmissible on the issue of negligence on the occasion in question. The reasoning given in support of such general rule is that admission of evidence of prior acts of negligence would inject collateral issues into the case and have a tendency to confuse the minds of the jurors.

The courts which have considered the question posed by the subject of this annotation have generally resolved the evidentiary conflict arising through the negligent entrustment theory in holding that where the vehicle owner has admitted liability for the acts of the driver under another theory of recovery, it is improper to allow the person injured in a motor vehicle accident to proceed under the theory of negligent entrustment. 30 A.L.R. 4th 838, 839 (footnote omitted). Here, *no such evidentiary conflict existed.* The plaintiff offered to withdraw the offer of proof with respect to Walker's prior citations, and submit only evidence that the employer permitted Walker to drive without the proper instruction or experience.

In my view, there existed no valid reason precluding the plaintiff from so doing. It may not surprise the trial bar that a court which provides a rule or sub-rule to govern all phases of litigation has not hesitated to give fatherly advice as to the theories to pursue at trial so that the jury is not distracted from what the court perceives to be the better and only theory.